SARAH A. JAMISON, W. O. JAMISON, J. W. JAMISON, R. E. JAMISON, SADIE JAMISON, GERTRUDE J. SMITH, LULU HAMILTON and CORA J. JONES, Appellees, v. MYRTLE LODGE No. 355 OF A. F. & A. M. and CRYPTIC CHAPTER No. 34 OF A. F. & A. M., Appellants.

**Real property:** EXCAVATION: LIABILITY FOR INJURY TO ADJOINING
1 LAND. In making an excavation of earth close to the boundary

line of adjoining land, reasonable precaution must be taken to prevent the neighbor's soil from falling, and if this has been done and the soil falls of its own weight and pressure liability for injury to the land alone attaches; if however, it falls solely from the weight of the superstructure, no liability attaches for injury either to the soil or the superstructure. But if the adjoining land sinks and falls by reason of the negligent manner in which the excavation was made, liability for injury to both the soil and superstructure follows.

**Same:** NEGLIGENCE: EVIDENCE. In this action for injury to adjoining property caused by an excavation, the evidence is held to require a submission of the question of defendant's negligence in failing to adequately support the ground of the adjoining owner, and to support a finding that the soil fell from its own weight and pressure and not from the weight of the superstructure.

**Same:** CONTRIBUTORY NEGLIGENCE: PLEADINGS. The owner of property is required to exercise reasonable care to preserve his building from injury by reason of the excavation of the adjoining lot; and in suing for damages on account thereof must plead and prove freedom from contributory negligence.

**Same:** . REMOVAL OF LATERAL SUPPORT: NOTICE. Where the owner of a building occupied the same while the work of excavating the adjoining lot progressed and he knew of the work, he was not entitled to notice of what was being done.

**Contributory negligence:** PLEADING. Failure to plead freedom from contributory negligence in the original petition is cured by pleading the same in an amendment, even after verdict.

*Appeal from Wayne District Court.*—HON. H. K. EVANS, Judge.

SATURDAY, JANUARY 25, 1913.

ACTION for damages resulted in a judgment against defendants, from which they appealed—*Affirmed.*

*Miles & Steele,* for appellants.

*Wilson & Smith* and *Poston & Murrow,* for appellees.

LADD, J.—Plaintiffs owned lots 5 and 6 in block 14 in Seymour, abutting Fourth street. On these lots was a wooden building veneered with brick, two stories high, twenty-two feet in width, and eighty feet long fronting west on said street. It rested on a stone foundation, which on the south side was from two to three feet high and about three feet from the south line of the lots. Immediately south of this line is a lot or part of a lot owned by the defendants. About September 1, 1907, they began excavating a cellar or basement to be about eight feet deep and extending from the street back one hundred feet and up to the line mentioned. When the excavation was nearing completion, and during several days prior to the occurrence in controversy, considerable rain fell, and the evidence tended to show that the soil at the north bank of the excavation softened somewhat and was crumbling away; that this continued until the brick began to fall and the foundation to slip, so that the building settled about sixteen inches near the center on that side. The evidence also indicated that the usual method in protecting a bank next to an excavation is by lumber and posts or curbing, or by constructing the wall in sections as the excavation proceeds, and that, had this been done, the soil of plaintiffs' lots would not have crumbled into the cellar. The evidence tended to show that the withdrawal of support by excavating the cellar caused the soil in its natural condition to crumble away, and the issue of whether the wall of the building slid out and let it settle down in consequence of withdrawing the lateral support of the soil in its natural condition also was submitted to the jury; the court saying that defendants "would only be required to use ordinary care in giving lateral support to the lot without the added weight of the building, and, if any additional support or precaution was necessary to protect the building, it was the duty of plaintiffs to furnish such support, and if the alleged injury and damage to plaintiffs' building was not caused by the negligence of the defendant in failing to use ordinary care in giving lateral support to the soil of

plaintiffs, but was caused by the weakness or decayed condition of the plaintiffs' building or because of the added weight of the building, then plaintiffs cannot recover."

I.   The principle that an owner may excavate the earth from his own land up to the line of that adjoining, and to whatsoever depth he may please, provided this does not interfere with the lateral support of the soil of the adjoining land, is not questioned. Incident to the land in its natural condition is the right to support from the adjoining land, and if, without being subjected to artificial pressure, it sinks and falls away in consequence of the removal of such support, the owner may have an action for damages against the party removing such support. This right of action does not depend on any want of care in the removal of the soil, but upon the violation of the right of property which has thus been invaded and disturbed. *McGuire v. Grant*, 25 N. J. Law, 356 (67 Am. Dec. 50) ; *Moellering v. Evans*, 121 Ind. 195 (22 N. E. 989, 6 L. R. A. 449, 2 Washb. Real Prop. page 389). The petition contained allegations of injury of this character, and therefore the omission to allege absence of contributory negligence was not a fatal defect therein. The withdrawal of such lateral support may be done in such a manner, however, as to create a liability beyond the injury to the land alone. The law requires of every man that he shall so use his own property as not unnecessarily to injure that of his neighbor, and therefore, if in making the excavation, which he has a right to do, he does it in a negligent manner, he will be liable for the full consequences of such negligence, not only for the injury to the soil itself, but to the improvement or superstructure thereon. *Uurick v. Dakota Loan & Trust Co.,* 2 S. D. 285 (49 N. W. 1054) ; *Block v. Haseltine,* 3 Ind. App. 491 (29 N. E. 937) ; *Quincy v. Jones,* 76 Ill. 241 (20 Am. Rep. 243) ; 1 Thomp. Orig. section 1106 et seq.; *Walker v. Strosnider,* 67 W. Va. 39, (67 S. E.

1. REAL PROPERTY: excavation: liability for injury to adjoining land.

1087, 21 Ann. Cas. 1); *Gildersleeve v. Hammond*, 109 Mich.
431 (67 N. W. 519, 33 L. R. A. 46).

In the last case the evidence tended to show that the
soil contained sand and gravel, and that, on the excavation
being made, the adjoining land would have slid into the ex-
cavation had it been in its natural condition, and that in
doing so the building was injured, and the court, after a
somewhat extended review of the authorities, concluded "as
to the law of this and similar cases" that: "(1) While a
landowner has the undoubted right to excavate close to the
boundary line, he must take reasonable precautions to prevent
his neighbor's soil from falling (2) If he has taken such
reasonable precautions, and yet the soil falls from its own
pressure, he is still liable for injury to the land, but not for
any injury to the superstructures. (3) If the pressure of
the superstructure causes the land to fall, he is not liable
either for injury to the land or superstructure. (4) If he
fails to take such reasonable precautions to protect his neigh-
bor's soil, and to preserve it in its natural state, he is liable
for the injury to both the land and the superstructure, if the
pressure of the superstructure did not cause the land to fall,
and it fell in consequence of the failure to take such rea-
sonable precautions." This is a clear summary of the law
with reference to the liability of the excavator, and the in-
structions given were in harmony therewith.

II.   If, then, in excavating the cellar, defendant there-
by deprived the soil of plaintiffs' lot of support, and solely
in consequence thereof, and not because of
the weight of the building thereon, it crum-
bled or slid over into the cellar, plaintiffs
were entitled to recover the damages to the land in its nat-
ural state or condition. There was no evidence of damage to
the soil alone, so that at most a nominal sum only might
have been allowed unless it were found further that, in the
manner of excavating or in omitting to protect the walls
against falling, the defendant was negligent in consequence.

2. SAME: negli-
gence: evi-
dence.

of which, and not of the weight of the building thereon, the
soil of plaintiffs' lot crumbled and fell away, in which event,
in the absence of fault on their part, plaintiffs would be en-
titled to recover not only damages resulting therefrom to
the lot but to the building as well.   On this last issue appel-
lant contends there was not sufficient evidence to warrant its
submission to the jury.   The evidence was in conflict as to
whether anything was done in the way of adequately sup-
porting the soil of the adjoining lot; and, as there was tes-
timony that this had been crumbling away for several days
before the building settled, the issue as to whether defend-
ants exercised that reasonable care exacted in supplying ar-
tificial support to the soil as by curbing or putting in posts
and boards and the like, or in laying the foundation in sec-
tions as the excavation proceeded, was for the jury to deter-
mine.   Conceding this, it is said that the evidence failed to
show that the settling of the building, but for its weight,
would have resulted from the removal of the lateral support.
In other words, it is contended that there is not sufficient
evidence to show that, without the added weight or pressure
of the building, the soil in its natural state would have crum-
bled and fallen away, in consequence of the excavation, back
to or under the building so as to have caused it to settle as
alleged.   An examination of the record has convinced us oth-
erwise.   The building was but three to three and one-half
feet from the lot line.   The depth of the excavation opposite
where the building settled was estimated by different wit-
nesses at from three or four to nine or ten feet.   Madison
testified that he was at the building on the day it settled, and
was "watching the bank by the Jamison building; it began
to slide in places quite a little.   There was quite a big slip
started in the north wall of the excavation towards the north-
east end—the northeast part of the wall.   It went west a con-
siderable distance.   It started about twenty feet from the
east end.   The excavation extended about fifteen to twenty
feet east of the Jamison building. . . . I noticed the

crumbling or caving in condition several days before it fell in. When it fell in, it started to go towards the northeast end. It kept up until it reached the wall of the Jamison building, and then the bricks began to come, and considerable fell out. . . . It was the center part of the Jamison building that slipped over into the excavation. In some places the building had slipped in not more than six inches, and in some places it would be a little over three feet.''

Beebe was at the building a few minutes after it fell, and testified: ''It seemed to have settled in the middle; the foundation and stone work had gone down with the bank, and left it so that it creeled in the center; there were large cracks up the side of the brick work, and the brick work had crumbled some. I think the foundation had gone down sixteen inches in the middle. The ends of the building stayed up because it did not cave at the .ends. The first story of the front was glass, and the second story veneered and had two or three windows. The glass was broken. The east and west ends of the building did not settle. No part of the building fell clear over. The principal cave was at the center. There was not very much of the veneered brick wall off, as I saw it that afternoon.''

The account of one of the Jamisons was as follows: ''When the building was precipitated into the excavation, it settled in the middle about sixteen to eighteen inches on one side. No other part of the building settled, except the front end was leaning a little; 'it was in a twist.' The fall affected the building so that it was all out of shape, was crooked; it was in a creel or buckle. Back fifty feet from the front it was settled; that left the other part of it in a twist. The floor went down until it struck solid ground on the south side. That is the walls. The foundation went down in the excavation. A part of the foundation slipped out from under the building. The foundation of the building was two and one-half or three feet of rock. The foundation slipped out for about twenty

feet along the side of the building.  Part of the foundation was out from under the building and part under it."

.McAlister related that he "saw the excavation going on probably every day, and my attention was called to the crumbling and caving condition of the north wall prior to the caving of the building.  The building caved on Monday, and I noticed the caving in of the wall of the excavation the previous Sunday.  The caving condition of the north wall was not to any great extent at that time.  I should judge the excavation then was in the neighborhood of eight feet. The crumbling condition of the wall seemed to be towards the top.  .  .  .  The soil in and around Seymour is what we term 'joint clay.'  The first layer is black soil, then you get down into the clay.  The ordinary effect of a period of rainfall on that kind of soil is to make it crumbly.  There is hardly ever a case where an excavation stands without crumbling away or sloughing off."

Another swore that "at the time the building caved in there was about forty feet of wall along the building had slipped in.  There was a stone wall about three feet under the Jamison building.  .  .  .  Even if a building should be situated five to ten feet away if the wall was slipping, the proper method of protection would be by building a wall in sections or support it by lumber, usually by lumber."

One Stormson testified that he had seen the clay slip or cave in prior to the day the building settled, and that on that day he was digging in the cellar and noticed "the clay made a slip sidewise.  .  .  .  The building dirt and brick of the Jamison's building came.  The dirt came first, and then the brick came."

Others testified concerning the occurrence, and there was other evidence indicating that joint clay when dry was hard, but when subject to the action of water was likely to crumble and fall away.  Some of the evidence referred to was controverted by the defendant.  Enough has been set out, however, to show that the issue was fairly for the jury.

From the evidence of the distance of the building from the excavation, the character of the soil, of recent rains, and that the soil when wet crumbled away, the jury might have con-cluded that without weight or pressure of the building the soil in its natural condition, in consequence of the removal of lateral support, crumbled and fell so as to permit the building to settle as alleged. The instructions with commendable clearness and perspicuity submitted this with other issues to the jury.

III.   Appellant also contends that the court erred in not submitting whether plaintiffs were without fault to the jury.

**3.   SAME: contributory negligence: pleadings: evidence.** Of course they might not have entered on defendant's lot in bracing or otherwise sustaining the bank, but apparently there was nothing to prevent them from strengthening their wall by interposing support from beneath or laterally, and thereby have avoided the injury. The excavator is under no duty with reference to the building save that of exercising ordinary care in what he does, and there seems no tenable ground for not exacting like degree of care from the adjoining owner in preserving the superstructures on his land from injury consequent from the withdrawal of lateral support. The rule prevails in this state that, in actions based on negligence, the injured party, in order to recover, must not only plead, but affirmatively prove, his freedom from negligence proximately contributing to the injury.

**4.   SAME: removal of lateral support: notice.** The plaintiffs were occupying their property and as well aware of the situation as the work of excavating progressed as defendant, and for this reason there was no occasion for notifying plaintiffs of what was being done. *Schultz v. Byers,* 53 N. J. Law, 442 (22 Atl. 514, 13 L. R. A. 569, 26 Am. St. Rep. 435); *Novotny v. Danforth,* 9 S. D. 301 (68 N. W. 749). Moreover, some of the evidence adduced tended to show that the building was not well constructed and the ends of the joists were decayed, and, as they might be presumed to know its

condition, it was fair for the jury to say whether, in view of all the circumstances disclosed, plaintiffs, in the exercise of ordinary care, should have taken measures for the protection of the structure against possible injury from the removal of lateral support. This was precisely what the jury was told in the ninth instruction hereinbefore quoted in saying that, "if any additional support or precaution was necessary to ·protect the building, it was the duty of plaintiffs to furnish such support." This is all plaintiffs could well have done, and we are of opinion that the issue of contributory negligence, in so far as involved, was fairly submitted to the jury.

Freedom therefrom was not alleged in the petition, but, after the verdict was returned, an amendment to the petition so alleging was filed. This cured the defect. Section 3760, Code; *Beard v. Guild*, 107 Iowa, 476; *Decatur v. Simpson*, 115 Iowa 348.

5. CONTRIBUTORY NEGLIGENCE: pleading.

The record is without error, and the judgment is *Affirmed*.