E. B. STARRETT, Appellee, v. EMMA A. BAUDLER, Appellant.

EASEMENTS: Creation, Existence, Etc.—Buildings—Easements by
1 Implication—Lateral Support. An owner of land may, *by implied grant*, obtain the same absolute right of lateral support for

buildings, etc., as he has *by law* for the soil in its natural state: i. e., a grantor who conveys a *part* of a lot or other integral tract of land, upon which part, at the time, is located a permanent, visible improvement, thereby *impliedly* burdens the *retained* part of the lot or land with an easement, running with the land, for the lateral support of the improvement located on the part of the land sold—an easement the *non-negligent* invasion of which matures a cause of action for damages.

PRINCIPLE APPLIED: One Frisbee died seized of Lot 11, upon which a brick building with stone foundation had been built. For some reason, the east foundation, two feet wide, had been built wholly upon the west two feet of Lot 10, which was immediately to the east of Lot 11. Longshore owned Lot 10, upon which stood, by itself, a frame building. Frisbee's heirs, apparently, settled this two-foot encroachment by giving Longshore, without controversy, a half interest in said wall, in return for a conveyance of the two-foot strip. Longshore gave the Frisbee heirs such a conveyance, it reciting that Longshore "reserved absolutely a full one-half interest in the stone and brick wall now situated on said strip, said reservation being the greater part of the consideration hereof." Three days later, and before the said deed to said two-foot strip was recorded, Longshore conveyed the *remaining* portion of said Lot 10 to Fred Baudler, the said two-foot strip being specifically "excepted." Baudler, 18 years later, conveyed Lot 10 to Emma Baudler, "except" said two-foot strip. Three years later, Frisbee's heirs conveyed Lot 11 and said two-foot strip and their one-half interest in the said wall to Starrett, subject to the remaining one-half interest of Longshore in said wall. Neither Longshore nor any of the grantees of Lot 10, less said two-foot strip, ever made use of any part of said east wall. At this point of time, Emma Baudler proceeded to excavate Lot 10 for a building, and in so doing, *but without negligence on her part,* caused said east wall to collapse. Starrett sued for damages *to the wall only,* but alleged no act of negligence.

*Held,* the deed from Longshore to the Frisbee heirs impliedly granted an absolute easement for the support of the wall in the remaining portion of Lot 10; that said easement ran with the land so conveyed; that an interference with said easement was an interference with a "right of property," and actionable irrespective of negligence.

ADJOINING LANDOWNERS: Excavations—Encroachments on 2 Adjoining Soil—Buildings—Negligence. Principles recognized:

(1) That an excavation which removes the lateral support of the *soil* of another, in its natural state, with consequent damage, ripens a cause of action, irrespective of negligence; and (2) that an excavation which removes the lateral support of *buildings* of another (no grant appearing) ripens a cause of action only in case of negligence. .

**PROPERTY:** Ownership ·and Incidents—Interference with Right of Property—Negligence. Principle recognized that an invasion of one's "*right of property*" ripens a cause of action, irrespective of negligence.

**EASEMENTS:** Creation, Etc.—Prescription—Buildings—Lateral Support. The right to lateral support for buildings may *not* be acquired by prescription.

**EASEMENTS:** Creation, Etc.—Severance of Ownership of Dominant and Servient Estates—Implied Grants—Notice. It is quite immaterial that the owner of a servient estate took his deed *subsequent* to the deed to the owner of the dominant estate, and that said servient owner, when he took his deed, had no "record" notice of such former deed, when the easement in question would also have been implied had the order of executing the deeds been reversed, and the servient owner been the first grantee.

PRINCIPLE APPLIED: See No. 1. (Note that no explanation was offered as to *why* said wall was placed wholly upon Longshore's land. Being upon his land, the wall presumptively belonged to him. Therefore, had Longshore *fu st* conveyed to Baudler Lot 10, except said two-foot strip, and had *thereafter* conveyed said excepted strip to Frisbee's heirs, the easement in question would have been implied in favor of Longshore, just as it was implied when the order of conveyance was reversed. This result follows because said easement was (1) *visible and apparent*, (2) *continuous*, and (3) *necessary*.)

**EASEMENTS:** Creation, Etc.—Rights as Against Purchaser of Servient Estates. Ordinarily, a conveyance by an owner of *part* of an integral tract of land will not give rise to an implied grant of an easement in the land so conveyed, but such is not the case when the easement contended for is:

1. *Apparent*—such as one may see if he cares to look;

2. *Continuous*—such as may be enjoyed without interference with the servient estate; and

3. *Necessary*—such that there could be no other reasonable mode of enjoying the dominant estate.

*Appeal from O'Brien District Court.*—WM. HUTCHINSON, Judge.

NOVEMBER 26, 1917.

ACTION for damages consequent upon the removal of lateral support. From judgment against her, the defendant appeals.—*Affirmed.*

*Herrick & Herrick* and *Faville & Whitney,* for appellant.

*T. E. Diamond,* for appellee.

1. EASEMENTS: creation, existence, etc.: buildings: easements by implication: lateral support.

LADD, J.—It is conceded that the sole question in this case is whether plaintiff had a cause of action against defendant. James Frisbee died seized of Lot 11 in Block 12 in the city of Sheldon. A brick building had been erected thereon, but its east wall, consisting of brick with a stone foundation, in some way not explained was placed on Lot 10, immediately east of Lot 11, and on a strip two feet wide along the west line of the latter lot. This wall extended from Ninth Street northerly 70 feet and 3½ inches. Doctor and Mrs. Longshore owned Lot 10, and on March 20, 1893, conveyed the strip described to the widow and heirs of James Frisbee, "reserving absolute a full and complete one-half interest in and to the brick and stone wall now situated thereon, said reservation being the greater part of the consideration thereof." Subsequently, on the 23d of the same month, the Longshores conveyed Lot 10, "reserving and excepting" the strip mentioned, to Fred C. Baudler; and on February 22, 1911, he conveyed the property by the same description to his wife, the defendant. Thereafter, and on February 21, 1914, the heirs of James Frisbee conveyed to the plaintiff the east 19 feet of Lot 11, together with one half of the party wall and the strip off the west side of Lot 10, "subject, however, to

the reservation stipulated in certain warranty deeds executed by Warren L. Ayres and Frances A. Ayres, his wife, and Maria Longshore and C. Longshore, her husband, whereby the said heirs reserve one half of the stairway on the above first described premises for ingress and egress to the upper story to conform with present wall, and whereby the said Longshores reserve absolute a full and complete one-half interest in and to the brick and stone wall of the last above described premises."

The defendant excavated her lot to a depth of about 8 feet from the street, back about 100 feet and too near the wall heretofore mentioned, and on October 22, 1914, said wall collapsed and fell. The court submitted to the jury whether the excavation done at defendant's instance caused the wall to collapse, and instructed them that, if it did, a verdict for the damages to the building and loss of rental should be returned. It should be added that the wall was never made use of by the Longshores or their grantees acquiring Lot 10 less the strip, a frame building having been thereon up to the time excavating was commenced. Want of care in what defendant caused to be done in excavating for a basement was not alleged, nor was there any claim for damages resulting to land of plaintiff in its natural state. The sole issue is whether plaintiff may recover on an implied grant of an easement in defendant's land to support the wall on the strip of land conveyed by the Longshores to the widow and heirs of James Frisbee, under whom plaintiff claims.

2. ADJOINING LANDOWNERS: excavations: encroachments on adjoining soil: buildings: negligence. But for such grant, defendant would have the right to excavate as deeply as she pleased, and up to the line, provided that so doing did not interfere with the lateral support of the soil of the adjacent land of plaintiff. Incident to this adjoining land in its

natural condition is the right of support, and if, without being subjected to artificial pressure, as of this brick wall, the soil sunk away in consequence of the removal of the support, as by this excavation, then the defendant must have been liable for the damages caused to the soil of such adjoining land. This is not because of any want of care, but for that thereby the adjoining owner's right of property is invaded. *Jamison v. Myrtle Lodge,* 158 Iowa 264.

**3. PROPERTY:** ownership and incidents: interference with right of property: negligence.

The lateral support to which an adjoining owner is entitled, however, is to the earth or soil in its natural state only, and not to buildings or other improvements which may be placed thereon. If the earth sinks away or falls, in consequence of the increased pressure of a wall or other artificial weight, when, but for such wall or weight, this would not have happened, there can be no recovery; for one so improving his land is bound so to do as not to interfere with his neighbor's right to the full enjoyment of his premises. In other words, the improvement should have been set back far enough so that the increased requirement for support would have been afforded by his own land. Thus far, the law is too well settled to call for the citation of authority. In harmony with the principle last stated is the further holding by the weight of American authority that, even though the land would have sunk away without the increased pressure of building or other structure, there can be no recovery for injury resulting to the building or structure. *Gilmore v. Driscoll,* 122 Mass. 199 (23 Am. R. 312) ; Jones on Easements, Sec. 620.

The withdrawal of lateral support may be in such a manner, however, as to create a liability beyond injury to the land. The law requires of every man that he shall so use his own property as not unnecessarily to injure that of his neighbor, and therefore if, in making the excavation,

which he has a right to do, he does it in a negligent manner, he will be liable for the full consequence of such negligence, not only for the injury to the soil itself, but to the improvement or superstructure thereon.

There is another rule, however, sometimes denominated as an exception to those alluded to, and it is this:

"If, by grant, express or implied, the owner of the adjoining land has acquired a right of lateral support for his buildings in addition to that given him by law for his soil, the liability of the disturber by excavation is absolute in respect to the buildings as well as the soil, and no inquiry arises as to whether the work was done negligently or unskilfully." *Walker v. Strosnider*, (W. Va.) 21 Am. & Eng. Ann. Cas. 1, 3.

4. EASEMENTS: creation, etc.: prescription: buildings: lateral support.

There was no express grant, and it is conceded that the right to lateral support may not be acquired in this country by prescription. See *Sullivan v. Zeiner*, (Cal.) 20 L. R. A. 730, and note.

The theory of plaintiff is that, inasmuch as the title to the strip conveyed to his grantors and the remainder of Lot 10 was in a common owner, the Longshores, and the strip was first conveyed, the deed to the strip on the west side of Lot 10 included by implication all that was necessary to the full enjoyment of said strip with the wall thereon, and therefore carried an easement in the portion of the lot retained for the lateral support of said wall.

In England, recovery for injury to the building is awarded where its weight has not contributed to the loss of lateral support, and this rule obtains in Virginia. *Stearns v. City of Richmond*, 88 Va. 992 (14 S. E. 847). The point is merely suggested, and without intending to express an opinion thereon. Manifestly, the right to support of land and the right to support of buildings stand upon distinct footings, as to the mode of acquiring them, the former being

in the nature of a right to property, and the latter must be founded on grant, express or implied, or, as held in England, founded on prescription. See *Dalton v. Angus*, 6 L. R. App. Cas. 740. When acquired, however, the character of the rights is the same. *Bonomi v. Backhouse*, 1 E., B. & E. 622, 655.

The case of *Dalton v. Angus*, supra, was given great consideration before the House of Lords and Privy Council of England, and, though there was disagreement there, as in the courts below, as to whether one might acquire a prescriptive right to lateral support, there was none as to such right under the circumstances disclosed in the case at bar. In the course of his opinion, the Lord Chancellor clearly expressed his view of the law on the subject:

"Land which affords support to land is affected by the superincumbent or lateral weight, as by an easement or servitude; the owner is restricted in the use of his own property, in precisely the same way as when he has granted a right of support to buildings. The right, therefore, in my opinion, is properly called an easement, as it was by Lord Campbell in *Humphries v. Brogden*, 12 Q. B. 742; though when the land is in its natural state the easement is natural and not conventional. The same distinction exists as to rights in respect of running water: the easement of the riparian landowner is natural; that of the mill-owner on the stream, so far as it exceeds that of an ordinary riparian proprietor, is conventional, i. e., it must be established by prescription or grant.

"If at the time of the severance of the land from that of the adjoining proprietor it was not in its original state, but had buildings standing on it up to the dividing line, or if it were conveyed expressly with a view to the erection of such buildings, or to any other use of it which might render increased support necessary, there would then be an implied grant of such support as the actual state or the

contemplated use of the land would require, and the artificial would be inseparable from, and (as between the parties to the contract) would be a mere enlargement of, the natural. If a building is divided into floors or 'flats,' separately owned (an illustration which occurs in many of the authorities), the owner of each upper floor or 'flat' is entitled, upon the same principle, to vertical support from the lower part of the building, and to the benefit of such lateral support as may be of right enjoyed by the building itself. *Caledonian Railway Company v. Sprot*, 2 Macq. 449.

"I think it clear that any such right of support to a building, or part of a building, is an easement; and I agree with Lindley, J., and Bowen, J., that it is both scientifically and practically inaccurate to describe it as one of a merely negative kind. What is support? The force of gravity causes the superincumbent land, or building, to press downward upon what is below it, whether artificial or natural; and it has also a tendency to thrust outwards, laterally, any loose or yielding substance, such as earth or clay, until it meets with adequate resistance. Using the language of the law of easements, I say that, in the case alike of vertical and of lateral support, both to land and to buildings, the dominant tenement imposes upon the servient a 'positive and a constant burden, the sustenance of which, by the servient tenement, is necessary for the safety and stability of the dominant. It is true that the benefit to the dominant tenement arises, not from its own pressure upon the servient tenement, but from the power of the servient tenement to resist that pressure, and from its actual sustenance of the burden so imposed. But the burden and its sustenance are reciprocal, and inseparable from each other, and it can make no difference whether the dominant tenement is said to impose, or the servient to sustain, the weight."

Lord Blackburn puts like conclusions on different grounds:

"It is, I think, conclusively settled by the decision in this House in *Backhouse v. Bonomi*, 9 H. L. Cas. 503, that the owner of land has a right to support from the adjoining soil; not a right to have the adjoining soil remain in its natural state (which right, if it existed, would be infringed as soon as any excavation was made in it), but a right to have the benefit of support, which is infringed as soon as, and not till, damage is sustained in consequence of the withdrawal of that support. This right is, I think, more properly described as a right of property, which the owner of the adjoining land is bound to respect, than as an easement, or a servitude *ne facias*, putting a restriction on the mode in which the neighbor is to use his land; but whether it is to be called by one name or the other is, I think, more a question as to words than as to things. And this is a right which, in the case of land, is given as of common right; it is not necessary either in pleading to allege, or in evidence to prove, any special origin for it; the burthen, both in pleading and in proof, is on those who deny its existence in the particular case. No doubt the right is suspended, or rather, perhaps, cannot be infringed, whilst the adjoining properties are in the hands of the same owner. He may dig pits on his own land, and suffer his own adjoining land to fall into those pits just as he pleases. When he severs the ownership and conveys a part of the land to another, he gives the person to whom it is conveyed (unless the contrary is expressed) not a right to complain of what has been already done, but a right to have the support in future. It is, I think, now settled that the conveyance may be on such terms as to prevent any such right arising (see *Rowbotham v. Wilson*, 8 H. L. C. 348; *Smith v. Darby*, L. R. 7 Q. B. 716; *Eadon v. Jeffcock*, L. R. 7 Ex. 379; *Aspden v. Seddon*, L. R. 10 Ch. 394). But the

burthen both of pleading and proving such a case lies on those setting it up. And I think that the decision of this House in *Backhouse v. Bonomi,* 9 H. L. C. 503, also conclusively settles this, that, though the right of support to a building is not of common right and must be acquired, yet, when it is acquired, the right of the owner of the building to support for it, is precisely the same as that of the owner of land to support for it. Both Lord Cranworth and Lord Wensleydale say that this right also is more properly to be called a right of property, to be respected by the owner of the adjoining land, than a negative easement or. servitude *ne facias.*"

See also opinion of judges in 4 Queen's Bench Div. 162, 3 L. R. Q. B. Div. 85.

The law as thus stated has been uniformly recognized by the courts of this country. *Lampman v. Milks,* 21 N. Y. 505; *Fremont, E. & M. V. R. Co. v. Gayton,* 67 Neb. 263; *Liquid Carbonic Co. v. Wallace,* 219 Pa. St. 457; *City of Quincy v. Jones,* 76 Ill. 231 (20 Am. R. 243); *Tunstall v. Christian,* 80 Va. 1 (56 Am. R.. 581); *Gilmore v. Driscoll,* 122 Mass. 199 (23 Am. R. 312); 14 Cyc. 1166; Jones on Easements, Sec. 605; Gale on Easements (9th Ed.), p. 372. Citation of decisions and text books laying down this rule might be extended indefinitely. Indeed, though appellant contends to the contrary and cites numerous decisions, in none is to be found an expression in derogation to the rule as stated. It was applied in *Aspden v. Seddon,* L. R. 10 Ch. App. 394, affirming a decision of Sir G. Jessel's, Master of the Rolls; *Geible v. Smith,* 146 Pa. St. 276; *Stevenson v. Wallace,* 27 Gratt. (Va.) 77. In the last case, the court declared that:

The "right to .support exists in respect of land only, and not in respect of buildings; but the former right remains, though houses are built. *Brown v. Robbins,* 4 Hurl. & Nor. R. 186 (28 L. J. Exch. 250); *Stroyan v. Knowles,*

6 Hurl. & Nor. R. 454 (30 L. J. Exch. 102). But a right to support for buildings may be acquired; and when so acquired it is an easement—which is defined to be 'a privilege without profit, which the owner of one tenement has a right to enjoy in respect of that tenement in or over the tenement of another person; by reason whereof the latter is obliged to suffer, or refrain from doing something on his own tenement for the advantage of the former.' Goddard on Easements, p. 2. An easement for support may be acquired in different modes, but all are reducible to one by grant, which may be express, implied or presumed. When the owner of land acquires the easement of support, it would seem that his natural right of support in respect of the soil is enlarged, so as to embrace the buildings which he may erect on his land, and invests him with the same right of support in respect of his buildings that he has *ex jure naturae* in respect of the soil.  *  *  *  The grant is *implied,* in the absence of express stipulations, in every case where the owner of adjoining houses, or of houses and land, severs the property by sale; for, in every such case, rights to support are granted by implication by the vendors and purchasers respectively, for the preservation of the buildings belonging to each other. Goddard on Easements, p. 154, and cases cited. Rights of support in such cases are mutually granted and reserved between original owner and first grantee; and the second grantee succeeds to owner's preserved rights."

5. EASEMENTS: creation, etc.: severance of ownership of dominant and servient estates: implied grants: notice.

We have no difficulty in reaching the conclusion that an easement for the support of the wall passed to plaintiff's grantors, unless, as suggested by appellant's counsel, this was obviated by the circumstance that defendant's grantor acquired title to Lot 10, less the strip, before the deed conveying the strip to plaintiff's grantors was filed for record, and therefore

without notice. This is mentioned in the brief, but cannot well be said to have been fully argued.

**6. EASEMENTS: creation, etc.: rights as against purchaser of servient estates.** The point may be disposed of, however, by observing that, in a case like this, as indicated in the excerpt from *Stevenson v. Wallace,* supra, if the servient estate is first conveyed, the reservation of an easement is to be implied. The rule is well established that an easement in land conveyed is never to be implied in favor of that retained by the grantor unless the burden thereof is apparent, continuous and necessary. This is on the theory that a grantor cannot derogate from his own grant, and, as a rule, he can retain an easement in the land absolutely conveyed only by express reservation. Jones on Easements, Sec. 136; *Burns v. Gallagher,* 62 Md. 462; *Warren v. Blake,* 54 Me. 276; *Carbrey v. Willis,* 7 Allen (Mass.) 364 (83 Am. Dec. 688).

Cases may be found declaring that an easement may not be reserved by implication, but the consensus of opinion seems to be that none is so reserved unless it is actually annexed to the grantor's estate at the time of the grant; is open, visible, and continuous, and necessary to the enjoyment of the estate which the grantor retains. Jones on Easements, Sec. 141.

There is some confusion in the cases, as pointed out in *Wells v. Garbutt,* 132 N. Y. 430 (30 N. E. 978), in consequence of overlooking the distinction between the implication of a grant and that of a reservation; and it should be borne in mind that, though a grantor may not derogate against his own grant, a grantee may take the language of the deed most strongly in his favor. The existence of the wall on the strip of land could not well have escaped the observation of defendant's grantor, and attention to the strip was directed by the exception in the deed. The wall was not only actually attached to be strip retained, but was open and plainly visible. To be continuous, an easement must be such

as may be enjoyed without the intervention of any act on the part of anyone, and noncontinuous is where there must be such intervention. Jones on Easements, Sec. 143. The rule is recognized in *Providence Tool Co. v. Corliss Steam Engine Co.*, 9 R. I. 564, 572, that:

"The continuous and the noncontinuous may be granted and annexed to the same estate. Upon the unity of title, they would both cease to exist as easements. Upon the severance of the estate, the continuous would revert and pass by the conveyance, but the noncontinuous would not revert or pass but by a new creation. This distinction, and this result, is recognized in the earlier and later cases upon the subject."

It was observed in *Larsen v. Peterson*, 53 N. J. Eq. 88 (30 Atl. 1094), that:

"Mr. Gale, in the later editions of his book—Secs. 50, 52 (4th Eng. Ed. 1868, pp. 87-89)—comes to the conclusion that the test of continuousness is that there should be an alteration in the quality—or 'disposition' of—the tenement, which is intended to be, and is, in its nature, permanent, and gives the tenement peculiar qualities, and results in making one part dependent, in a measure, upon the other. It is not of the essence of this test, as applied to a watercourse, that the water should flow of itself continuously, but the test is that the artificial apparatus by which its flow is produced is of a permanent nature. It is with a view of bringing out this quality of permanence that the learned author contrasts this class of easements with a right of way, 'the enjoyment of which depends upon an actual interference of man at each time of enjoyment.' Now, what is meant by that sentence is that the burthen of the easement in the case of a right of way is not felt by the servient tenement except at the moment of each enjoyment of it. A permanent structure upon, or alteration of, the servient tenement is not a necessary element of such an easement.

And by the expression 'interference of man at each time of enjoyment,' is meant no more than an interference with the servient tenement by an entry upon it, as illustrated not only by ordinary rights of way, but also by rights of way with a right to take something from the servient tenement, as in *Polden v. Bastard,* 4 Best & S. 258, L. R. 1 Q. B. 156."

It is said, in Section 143 of Jones on Easements, that:

"The test of continuousness is that there is an alteration or arrangement of a tenement which makes one part of it dependent in some measure upon another. This alteration or arrangement must be intended to be permanent in its nature."

Enough has been said to indicate that the easement for the support of the wall is continuous; for such a structure is regarded as permanent, and no act of interference with the servient estate is essential to its enjoyment.

Such easement would also seem to be of strict necessity, —that is, reasonably necessary to the support of the wall. Pitney, V. C., after an exhaustive view of the authorities in *Toothe v. Bryce,* 50 N. J. Eq. 589 (25 Atl. 182), expressed the opinion that the necessity must be absolute; and authorities are not wanting employing this language. On the other hand, Lord Campbell declared in *Ewart v. Cochrane,* 7 Jur. (N. S.) 925, that:

"When I said it was necessary, I do not mean that it was so essentially necessary that the property could have no value whatever without this easement; but I mean that it was necessary for the convenient and comfortable enjoyment of the property as it existed before the time of the grant."

And in *Wells v. Garbutt,* supra, it is said that:

"While absolute physical necessity need not be shown, as in the case of landlocked premises, or the support of a

wall, there must be a reasonable necessity, as distinguished from mere convenience."

In a sense, no easement or quasi easement can well be absolutely necessary to any possible enjoyment of property. The most that can be required is that it be, in addition to being apparent and continuous, essential to use and enjoyment of the premises as permanently improved at the time of the conveyance of the servient estate. And this appears to be what is meant by the term "strict necessity," in defining easements reserved by implication. *Warren v. Blake,* 54 Me. 276 (89 Am. Dec. 748); *Carbrey v. Willis,* 7 Allen (Mass.) 364 (83 Am. Dec. 688); *Kelly v. Dunning,* (N. J.) 10 Atl. 276; Jones on Easements, Sec. 154; *Burns v. Gallagher,* 62 Md. 462; *Dunklee v. Wilton Railroad Co.,* 24 N. H. 489. The term "necessity" is to be understood as meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement.

There are many decisions recognizing an implied reservation as the converse of an implied grant. *Elliott v. Rhett,* 5 Rich. Law (S. C.) 405 (57 Am. Dec. 750); *Seibert v. Levan,* 8 Pa. St. 383 (49 Am. Dec. 525); *Seymour v. Lewis,* 2 Beas. (N. J. Eq.) 439 (78 Am. Dec. 108); *Outerbridge v. Phelps,* 58 How. Prac. (N. Y.) 77; *John Hancock Mut. Life Ins. Co. v. Patterson,* (Ind.) 2 N. E. 188. Some of these cases seem to have missed the distinction always to be observed in ascertaining whether there is an implied grant of an easement, and whether there is an implied reservation. Where the conveyance of the so-called servient estate is complete and absolute on its face, its very terms exclude all other interest therein, and there can be no derogation of the title thus passed, save when the estate retained is permanently so improved as that to deprive it of an easement in that conveyed would render impossible its full use and enjoyment in that condition. Here, the easement of support was strictly necessary to the use of the strip of land

as permanently improved. The wall was annexed to the realty, and so located that the portion of Lot 10 conveyed to defendant's grantor was entirely essential to the beneficial use and enjoyment of the land retained by the grantor. The issue as to notice, then, was immaterial; for, if there had been no conveyance to the Frisbee heirs, the easement must have been retained by implied reservation by the grantors.

There was no error, and the judgment is—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.