MARY COVELL, Appellant, v. SIOUX CITY, Appellee.

No. 44116.

FEBRUARY 8, 1938.

Griffin & Griffin, for appellant.

H. C. Harper and John D. Beardsley, for appellee.

KINTZINGER, J.—Plaintiff was the owner of a 33 by 100-foot lot in Sioux City, Iowa. Perry creek, a natural stream

running through Sioux City, was located in its natural course about 75 feet westerly of plaintiff's lot and dwelling. There had been another house on the adjoining lot between plaintiff's house and the creek until 1931, when the defendant purchased that lot and moved the house away. Between 1931 and 1935 the defendant dug a new channel for the creek through the adjoining lot. In doing so defendant excavated the ground to within several feet of the west line of plaintiff's lot, resulting in a partial destruction of the natural lateral support of plaintiff's lot. The new watercourse of Perry creek was completed in 1935 and now runs substantially parallel with the west line of plaintiff's lot.

At the close of plaintiff's evidence, the court sustained defendant's motion for a directed verdict in its behalf, and plaintiff appeals. Additional facts are shown in the opinion.

Plaintiff testified that the sidewalk on her property since the new channel was constructed has sagged and part of it slipped away more than an inch; she also testified that since the change the floors in her house became separated from the walls and that the ceilings in a couple rooms have separated from the walls; that there is a plaster crack across the whole south side of one of the rooms; that in some places on the west side of the house the floors sagged away from the walls about an inch; that the brick foundation under the house sags down on the west side. The building has been there for more than twenty years. Plaintiff first noticed the floors pulling away from the walls about two years ago. Plaintiff also testified that her property has never been flooded by Perry creek.

The only other witness testifying on behalf of plaintiff is one R. P. Casey, a real estate agent who was called to establish the amount of plaintiff's damages. He went through the house and also described its then condition with reference to the settling of the walls and floors, etc., as described by plaintiff. He testified that the house was worth $500 less in its present condition than it would have been without the cracks and settlings therein, as shown by plaintiff, before the construction of the new channel.

He also testified that the foundation appeared to be settling and that the cracks appeared to be the result of the settling of the foundation. This house was over twenty years old, and he testified that when a house with a brick foundation is

twenty years old, it is apt to settle and show cracks. He also testified that sidewalks twenty years old are apt to settle on one side or the other. The witness Casey was then asked the following question, to wit:

"Q. Do you know what causes something of that kind? (Referring to the cracks and settlings.) A. Well, it seems to be the creek washing under there."

Defendant's motion for a directed verdict was based upon the following grounds:

"That there is a complete failure on the part of the plaintiff's evidence to prove any negligence whatsoever on the part of the defendant in the construction of the ditch complained of.

"That there is no legal liability for the right of lateral support to the improvements placed on the plaintiff's property.

"The plaintiff's evidence has failed to show any damage to her resulting from the nuisance complained of."

Plaintiff failed to establish any negligence whatever on the part of defendant in the construction of the ditch complained of. Likewise there was no evidence whatever of any damage resulting from any nuisance as alleged in plaintiff's petition.

The only question left, therefore, is whether or not there is any liability on the part of defendant in failing to furnish lateral support to the improvements placed on plaintiff's property.

I. Appellant contends that the court erred in sustaining the motion because the evidence tends to show that the water in the creek was the cause of the settling of the foundation of plaintiff's dwelling; appellant's contention being that after the new channel for Perry creek was dug, the water from the creek percolated or seeped through the ground between the new channel and plaintiff's house so that the ground thereunder, by such percolation and seepage, softened to such an extent as to cause the damage complained of.

Under the doctrine of lateral support in this and other states, a person excavating an adjoining lot is required to furnish lateral support for the adjoining ground in its natural state only. Jamison v. Myrtle Lodge, 158 Iowa 264, 139 N. W. 547; Starrett v. Baudler, 181 Iowa 965, 165 N. W. 216, L. R. A.

1918B, 528; Hemsworth v. Cushing, 115 Mich. 92, 72 N. W. 1108; Schaefer v. Hoffman, 198 Wis. 233, 223 N. W. 847.

 In making an excavation of earth close to the boundary line of adjoining land, reasonable precausion must be taken to prevent the neighbor's soil from falling; and if this has been done and the soil falls of its own weight and pressure, the liability for injury to the land attaches.

If, however, the land falls solely from the weight of the superstructure thereon, no liability attaches for injury to either the soil or the superstructure; but, if the adjoining land sinks and falls by reason of the negligent manner in which the excavation was made, liability for injury to both the soil and the superstructure follows. Jamison v. Myrtle Lodge, 158 Iowa 264, 139 N. W. 547; Starrett v. Baudler, 181 Iowa 965, 165 N. W. 216, L. R. A. 1918B, 528.

With reference to this subject, 2 C. J. S. Adjoining Landowners, 12, Sec. 11, states:

"In the absence of statute, contract otherwise providing, or of negligence, an owner excavating on his land adjoining property encumbered by structures which increase the lateral pressure is not liable for damages for removal of the lateral support."

This rule is supported by the following cases: Starrett v. Baudler, 181 Iowa 965, 165 N. W. 216, L. R. A. 1918B, 528; Home Brewing Co. v. Thomas Colliery Co., 274 Pa. 56, 117 A. 542.

The right of natural support applies only to lands in their natural condition, and does not extend so as to give the owner of a building erected on his land the right to have support for this increased burden resulting in increased lateral pressure. One landowner cannot, by altering the natural condition of his land, deprive the adjoining proprietor of the privilege of using his own land as he might have done before; and, consequently, he cannot, by building a house near the margin of his land, prevent his neighbor from excavating his own soil, even though it may endanger the house. 1 Am. Jurisprudence, 519, Sec. 22; Moody v. McClelland, 39 Ala. 45, 84 Am. Dec. 770; Moellering v. Evans, 121 Ind. 195, 22 N. E. 989, 6 L. R. A. 449; Winn v. Abeles, 35 Kan. 85, 10 P. 443, 57 Am. Rep. 138; Gilmore v. Driscoll, 122 Mass. 199, 23 Am. Rep. 312; Gildersleeve v. Ham-

mond, 109 Mich. 431, 67 N. W. 519, 33 L. R. A. 46; Young v. Mall Inv. Co., 172 Minn. 428, 215 N. W. 840, 55 A. L. R. 461; Walker v. Strosnider, 67 W. Va. 39, 67 S. E. 1087, 21 Ann. Cas. 1; 59 A. L. R. 1252.

In the case of Jamison v. Myrtle Lodge, 158 Iowa 264, l. c. 267, 139 N. W. 547, 548, this court said:

"The principle that an owner may excavate the earth from his own land up to the line of that adjoining, and to whatsoever depth he may please, provided this does not interfere with the lateral support of the soil of the adjoining land, is not questioned. Incident to the land in its natural condition is the right to support from the adjoining land, and if, without being subjected to artificial pressure, it sinks and falls away in consequence of the removal of such support, the owner may have an action for damages against the party removing such support. This right of action does not depend on any want of care in the removal of the soil, but upon the violation of the right of property which has thus been invaded and disturbed. McGuire v. Grant, 25 N. J. Law 356, 67 Am. Dec. [49] 50; Moellering v. Evans, 121 Ind. 195, 22 N. E. 989, 6 L. R. A. 449; 2 Washb. Real Prop. page 389. * * * The withdrawal of such lateral support may be done in such a manner, however, as to create a liability beyond the injury to the land alone. The law requires of every man that he shall so use his own property as not unnecessarily to injure that of his neighbor, and therefore, if in making the excavation, which he has a right to do, he does it in a negligent manner, he will be liable for the full consequences of such negligence, not only for the injury to the soil itself, but to the improvement or superstructure thereon. * * * Gildersleeve v. Hammond, 109 Mich. 431, 67 N. W. 519, 33 L. R. A. 46.

"In the last case the evidence tended to show that the soil contained sand and gravel, and that, on the excavation being made, the adjoining land would have slid into the excavation had it been in its natural condition, and that in doing so the building was injured, and the court, after a * * * review of the authorities, concluded 'as to the law of this and similar cases' that:

" '(1) While a landowner has the undoubted right to excavate close to the boundary line, he must take reasonable pre-

cautions to prevent his neighbor's soil from falling. (2) If he has taken such reasonable precautions, and yet the soil falls from its own pressure, he is still liable for injury to the land, but not for any injury to the superstructures. (3) If the pressure of the superstructure causes the land to fall, he is not liable either for injury to the land or superstructure. * * *'

"This is a clear summary of the law with reference to the liability of the excavator."

Under this rule a landowner has the right to make any excavation on his own property which does not interfere with the support of his neighbor's land in its natural state and has no duty to protect buildings which may be erected on that land, except that of using ordinary care in making the excavation.

The plaintiff in this case does not allege or prove that the excavation made for the new channel of Perry creek was in any way made in a negligent manner. The petition in this case simply alleges that defendant "dug a new channel with a sharp and abrupt bank along a part of plaintiff's property, with the result that the natural lateral support of plaintiff's lot was partially destroyed, thereby causing plaintiff's dwelling house on said lot to sag, seriously damaging the same and depreciating its value." The petition nowhere alleges that any part of the bank was washed away because of any water flowing through Perry creek. The nearest allegation of the petition with reference to any "washing of the banks" is one stating that "said condition *will* become more serious by reason of the washing of the banks of the channel * * * by rains and natural processes." But nowhere is it alleged that any water has at any time heretofore washed away any part of the bank. Neither does the petition allege that any water from Perry creek has at any time seeped or percolated through the bank of the new channel, nor was any evidence offered to that effect.

It is the rule in this and other states that where the adjoining property has a building or structure thereon, the person excavating the adjoining lot is not in duty bound to also furnish sufficient support to uphold the added weight caused by the pressure of the building thereon.

▋▋▋ Appellant contends, however, that where an adjoining owner collects water upon his land, thereby causing it to percolate or seep through the ground between his land and the ad-

joining building, the person wrongfully causing said water to be thrown against the adjoining property will be liable for the damages caused by said percolation and seepage. This seems to be the rule in Iowa and other states. Healey v. Citizens G. & E. Co., 199 Iowa 82, 201 N. W. 118, 38 A. L. R. 1226; Brown v. Armstrong, 127 Iowa 175, 102 N. W. 1047; St. Louis, I. M. & S. Ry. Co. v. Magness, 93 Ark. 46, 123 S. W. 786; Quinn v. C. B. & Q. Ry. Co., 63 Iowa 510, 19 N. W. 336; Bohrer v. Dienhart Harness Co., Ind. App., 45 N. E. 668; Rosen v. Kroger Grocery & Baking Co., Mo. App., 5 S. W. 2d 649.

Upon a similar principle it is held that a person blasting rock is liable for damages resulting therefrom to adjoining property. Watson v. Mississippi River Power Co., 174 Iowa 23, 156 N. W. 188, L. R. A. 1916D, 101; Arthur v. Henry, 157 N. C. 393, 73 S. E. 206; Northern Pac. Ry. Co. v. Tillotson, 84 Wash. 678, 147 P. 423; Walton v. Cherokee Colliery Co., 70 W. Va. 48, 73 S. E. 63; City of Chicago v. Murdoch, 212 Ill. 9, 72 N. E. 46, 103 Am. St. Rep. 221.

There is no testimony in this case tending to show that the water, if any, from Perry creek at any time overflowed into plaintiff's property. On the contrary, the evidence shows that plaintiff's property was considerably higher than the land on the west side of the channel, so that if the water rose it would only overflow the bank on the west side of the creek. Nor was there any testimony in this case tending to show that the water from the creek, after its course had been changed, had ever percolated or seeped into the basement of plaintiff's building, or into the ground under it. The only testimony offered by the plaintiff under which she claims that the cause of the settling of plaintiff's house was due to the percolation or seepage of water was the testimony of Mr. Casey, a real estate agent. He was not a contractor, builder, or engineer, and showed no qualifications whatever tending to show that he was in any way qualified to determine the cause of the settling of plaintiff's house. The only testimony under which plaintiff claims to establish the cause for the settling and damage to her building was that of Mr. Casey, when he said in answer to the question:

"Q. Do you know what causes *something* of that kind? A. Well, it *seems* to be the creek washing under there."

In the first place the question did not inquire as to the

cause of the present condition of plaintiff's house but was simply an inquiry as to whether he knew "what causes something of that kind." His answer to that question was, "Well, it seems to be the creek washing under there." Mr. Casey did not even testify that he saw any water in the creek. He does not testify as to seeing any moisture in the ground on plaintiff's lot, or of seeing any water in the cellar of her building. If he had testified that he saw water in the basement or that he saw a moist condition of the ground on plaintiff's lot adjacent to water in the creek, there might be some justification for submitting to the jury the question of the cause of the damage to plaintiff's house.

Plaintiff has cited a number of other cases in support of her contention that a defendant is liable for damages to adjoining property by water being collected, thrown upon, percolating, or seeping through the ground on plaintiff's property. In all of these cases, however, there was no question of the sufficiency of evidence tending to show the cause of the damage. The trouble with plaintiff's case is that there is no probative evidence tending to establish the cause of the damage to her building.

■■■ It is therefore our conclusion that the bald statement of a lay witness that *it seems to him* that such a condition was caused by the creek washing under the house, without any direct testimony that the creek ever did wash under it, is not of sufficient probative force to warrant the submission of the case to the jury. It is our conclusion that the testimony in this case would not support a finding that plaintiff was entitled to any lateral support to her property, other than to support the adjacent ground in its natural state, and that plaintiff was not entitled to lateral support for the increased pressure of the building thereon. The only damage alleged in plaintiff's petition is the damage to the building itself; and, as the evidence is not sufficient to support a finding that the alleged damages were caused by any water percolating or seeping through the ground, we are forced to the conclusion that the order of the lower court in sustaining defendant's motion for a directed verdict was right. The judgment is, therefore, hereby affirmed.—Affirmed.

STIGER, C. J., and all Justices concur.