CHRISTENSEN, Respondent, vs. BADGER IMPROVEMENT COMPANY, Appellant, and SKLUTE and another, Respondents.

*May 13—October 20, 1925.*

*Adjoining owners: Projections on building of one owner interfering with erection of building by other: Removal by builder: Evidence: Sufficiency.*

1. Where a gutter on defendant's building projected over adjoining premises, and defendant knew of the proposed erection of a building by an adjoining owner and the proposed height thereof, or could have obtained such knowledge, one notice to defendant by the adjoining landowner to remove the gutter was sufficient; and on his failure to remove it the defendant cannot complain of its removal by the adjoining owner. p. 603.

2. A finding of the trial court, on conflicting evidence, that plaintiff removed the gutter, which interfered with the erection of a building by him, in a careful and prudent manner, is binding on appeal. p. 603.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the plaintiff and against the defendant *Badger Improvement Company*.

This is a companion case, brought contemporaneously

with the *Mann Case*, decided herewith (*ante*, p. 567, 204 N. W. 499), the two cases having been tried together in the lower court, and having been argued orally and briefed together in this court. The findings, in so far as they are material herein, are as follows:

"Second. That said defendant, since May 31, 1912, has been and now is the owner in fee of the premises described as lot No. 4, and the east ten feet in width of the south half of lot number 11 in block 18, original plat of Racine, together with the north nine feet in width of the south ten feet in width of said lot 11, subject to the right of building over and occupying the space above said last described strip; that the buildings situate on said real estate consist of a large brick structure used as a moving picture theater, known as the Bijou theater, having an entrance from Main street across the premises of Harry E. Mann.

"Third. Same as finding number two in the Harry E. Mann case.

"Fourth. Same as finding number three in the Harry E. Mann case.

"Fifth. Same as finding number four in the Harry E. Mann case, except it states that for a distance of 130 feet the north wall of the Arcade building was to be so constructed so as to join and be immediately contiguous to the south wall of the building of the *Badger Improvement Company*.

"Sixth. Same as finding number fifth in the Harry E. Mann case.

"Seventh. Same as finding number sixth in the Harry E. Mann case.

"Eighth. Same as finding number seventh in the Harry E. Mann case.

"Ninth. That the Bijou theater, during the erection of the Arcade building, was in constant use as a moving picture theater, and there were gathered daily therein large numbers of people; that the underpinning method adopted by the plaintiff and approved by Johnson was the generally approved and safest method of doing the work; that the so-called sheathing method, in view of the uses to which the adjoining buildings were put and the depth of the excava-

tion, was inadequate and unsafe, and had such method been used it would have been necessary also to needle the building of the defendant *Badger Improvement Company,* or otherwise support it, at an expense as great or greater than the expense of underpinning.

"Tenth. Same as finding number ninth in the Harry E. Mann case.

"Eleventh. Same as finding number tenth in the Harry E. Mann case.

"Twelfth. Same as finding number eleventh in the Harry E. Mann case.

"Thirteenth. Same as finding number thirteenth in the Harry E. Mann case.

"Fourteenth. That the contract price of the work included ten per cent. over and above the cost thereof, and amounts to $3,307.20, which sum became due and payable on September 16, 1922, and no part of which has been paid.

"Fifteenth. That the gutter on the south wall of the premises of the *Badger Improvement Company* projected over the premises of the defendants *Sklute* and *Komiss;* that said *Badger Improvement Company* was frequently notified by plaintiff to remove said gutter, which said defendant promised and agreed to do, but neglected and refused to remove said gutter or any part thereof.

"Sixteenth. That it became necessary for the plaintiff to remove said gutter, which plaintiff did in a careful and prudent manner; and that in so doing, and in plaintiff's subsequent work, plaintiff did not injure or damage the roof of the defendant *Badger Improvement Company* more than naturally resulted from the removal of said gutter.

"Seventeenth. That the defendant *Badger Improvement Company* knew that the wall of the Arcade building was intended to be built to a point above the location of where said gutter projected out over the premises of said defendants *Sklute* and *Komiss.*

"Eighteenth. That said gutter was so fastened to the roof of the defendant *Badger Improvement Company's* premises that it could not be moved without moving that part of the roof which covered the braces and parts which sustained the gutter, which would leave that part of the roof

exposed to the rain and snow, and that it could not be crimped or bent back over the roof.

"Nineteenth. That after said gutter was removed said defendant *Badger Improvement Company* suffered and permitted its roof to be and remain exposed to the weather for an unreasonable length of time, which delay and neglect was the proximate cause of the damage it may have sustained; that after the wall of the defendants *Sklute* and *Komiss* was built to an elevation higher than the roof of the defendant *Badger Improvement Company,* said wall prevented the discharge of the roof waters upon the premises of the defendants *Sklute* and *Komiss,* and the wall and roof formed a basin wherein the waters on the defendant *Badger Improvement Company's* premises collected, and, there being no fall to the down spout recently built by said *Badger Improvement Company,* some of said roof waters necessarily escaped into the interior of said defendant's building.

"Twentieth. That defendant's building was rented to one McKivett under a long-term lease, which provided that the tenant should keep the premises in repair, and that the repairs to the interior caused by the leakage from the roof were made by the tenant, McKivett, at his own sole cost and expense.

"Twenty-first. That such repairs as the defendant *Badger Improvement Company* made to its roof and the construction of the saddle or runway for its roof waters were necessary, because of the removal of the old gutter, to furnish drainage for the roof water of the defendant *Badger Improvement Company's* building, and were not rendered necessary because of any wrong or default of plaintiff in removing said gutter."

### "Conclusions of law.

"First. That the duty of supporting the building of the defendant *Badger Improvement Company* was upon it and not upon the plaintiff or the defendants *Sklute* and *Komiss,* after the service of the notice by the latter.

"Second. That the defendants *Sklute* and *Komiss* were not required to build the Arcade wall in sections, in order to support the building of the defendant *Badger Improve-*

*ment Company,* nor to undertake the responsibility and risk of using any other substitute method, but such duty was upon the defendant *Badger Improvement Company,* itself.

"Third. That the plaintiff is entitled to judgment against the defendant *Badger Improvement Company* for the sum of $3,307.20, with interest thereon from September 16, 1922, together with costs.

"Fourth. That the defendant *Badger Improvement Company* is not entitled to recover of the plaintiff under its counterclaim, and that the plaintiff is entitled to judgment dismissing said counterclaim upon the merits."

For the appellant there were briefs by *Simmons, Walker & Wratten* of Racine, and oral argument by *John B. Simmons.*

For the respondent *Christensen* there was a brief by *Thompson, Myers & Helm* of Racine, and oral argument by *W. D. Thompson.*

For the respondents *Sklute* and *Komiss* there was a brief by *Hand & Quinn* of Racine, and oral argument by *E. R. Hand.*

The following opinion was filed June 22, 1925:

DOERFLER, J. There was no party-wall in the instant case, which materially differentiates this case from the *Mann Case.* An agreement like that entered into in the *Mann Case* of date of June 26, 1922, was also entered into between the *Badger Improvement Company, Sklute* and *Komiss,* and the plaintiff. The questions of lateral support involved in this case have been considered by the court in the *Mann Case,* and decided, and, applying such decision to the instant case, it is adverse to the contentions of the *Improvement Company.* There is also ample evidence in the case to support the amount of the judgment in the instant case without taking into consideration the counterclaim of the *Improvement Company* referred to in the findings.

Referring first to the fifteenth finding of fact, we are of the opinion that this finding is substantially supported by

the evidence. The evidence is not very persuasive to the effect that the *Badger Improvement Company* was *frequently* notified to remove the gutter, but no question can be raised but that one notice at least was given to that effect. The law does not require frequent notices, and, in fact, it is questionable whether any notice whatever is necessary. The *Improvement Company* knew of the proposed erection of the Arcade building. It knew, or is charged with knowledge, of the proposed height of the building, and if it did not know of such height it could readily have obtained knowledge on the subject.

There is also ample evidence that the attempted removal of the gutter, in so far as it extended over onto the property of the Arcade, did not result in a complete removal, but left part of the same projecting over the line. It might have been more satisfactory if the contractor of the Arcade had permitted this small projection in such a way as to allow the outer edge of the gutter to be imbedded in the cement wall of the Arcade, thus providing what would have amounted substantially to a flashing on and into the wall. However, this was a matter for the contractor and the owners of the Arcade to decide, and they could have permitted it or refused it, as they saw fit.

With reference to the sixteenth finding of fact there was a clear conflict in the evidence. The trial court heard the evidence, saw the witnesses, came in close contact with the experts, had an opportunity to view the premises, and, in short, was in a position where he could better determine these facts than this court on the record. We therefore, under the rule prevailing on the subject, deem such finding binding upon the parties on this appeal.

The seventeenth finding stands as a verity and is not subject to attack. The same may be said of the eighteenth and the nineteenth findings.

The theater known as the Bijou at all times herein mentioned was in the possession of one McKivett under a lease

from the owner, the *Improvement Company.* This lease contained a provision which required the tenant to keep the premises in repair. Under this lease, any damage resulting to the property of the tenant by reason of any wrongful acts of the contractor of the Arcade belonged to the tenant and not to the owner of the building. The *Improvement Company,* however, claimed that it had assumed such liability; that notwithstanding that the bills had been contracted by the tenant, nevertheless the company either paid in part for the same or had assumed their payment. The evidence upon this subject upon the part of the *Improvement Company* is highly unsatisfactory and unpersuasive. The facts are very much like those involved in the case of *Greenberg Realty Co. v. Cream City R. & P. Mfg. Co.* 183 Wis. 259, 197 N. W. 815. The time when the alleged repairs to the property of the tenant were made, relative to the time when the alleged damage was actually incurred, raises a very serious doubt of the assumption of the liability by the company, and is rather persuasive of the contention made by the plaintiff herein that the pretended assumption resulted from the desire, after the commencement of the present action, to create the basis of a counterclaim to plaintiff's action. At any rate, there is sufficient evidence in the case to warrant a logical inference of what is held by the court in the twentieth finding of fact.

There is ample evidence to support the twenty-first finding of fact, and, in view of what has heretofore been said, the conclusions of law herein set forth were fully warranted and justified.

The judgment of the lower court must therefore be affirmed.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on October 20, 1925.