ROSE RESNICK ET AL., APPELLEES, V. PAUL KAZAKES, APPELLANT.

FILED JULY 29, 1932. No. 28094.

*Clement L. Waldron* and *David O. Mathews*, for appellant.

*H. L. Mossman* and *Lower & Sheehan, contra.*

Heard before GOSS, C. J., DEAN, EBERLY, DAY and PAINE, JJ., and DICKSON and TEWELL, District Judges.

EBERLY, J.

This case, now presented on motion for rehearing, was formerly determined by this court in an opinion reported as *Resnick v. Kazakes*, 122 Neb. 489. Reference is made to the statement of facts contained in that opinion.

It appears that by decree entered in the district court for Douglas county, the defendant, Paul Kazakes, at the suit of Rose Resnick and her husband, Hyman A. Resnick, was "permanently enjoined from maintaining an eave spout or cornice on his building, or any other thing or projection, except the brick wall now there," as fully described in this opinion, and was "ordered to remove any and all such projections forthwith," and to pay the sum of $700 damages. From this judgment, and the order of the trial court overruling his motion for a new trial, the defendant Kazakes appeals. By the original opinion adopted, heretofore referred to, this judgment was, in all respects, affirmed.

The propriety of the measure of damages as applied by the trial court, as well as the sufficiency of the evidence to sustain its decree, are now presented for our consideration. Upon a careful rereading of the record, in the light of the briefs and arguments of counsel, we have arrived at the opinion that in certain respects our former conclusion is not a correct disposition of the case and should be modified.

The *locus in quo* is situated on a portion of lot 4, in block 5, in Park Place, in Omaha, Nebraska, and is bounded by Cass street on the south and Thirty-third street on the east. The defendant is the owner of the north 20 feet of the south 100 feet of the east 43 feet of the west 65 feet of this lot. On this tract, in 1926, he erected a one-story brick building. In 1929 he added to this building a second story.

Plaintiffs are the owners of the south 80 feet of the east 43 feet of the west 65 feet of this lot. On these premises, in 1929, they erected a one-story brick building whose outside dimensions are 80 feet by 43 feet.

The plaintiffs claim, and the trial court found as the basis of its decree, that the defendant, in the erection of his two-story brick building, "built it in and upon" the real estate of the plaintiffs 2 1/2 inches at the sidewalk line on Thirty-third street; that the top of defendant's building projects over the mutual property line of these properties 4 1/2 inches; and that to this wall thus encroaching the defendant added an eave spout and cornice which project over the premises of the plaintiffs to the extent of 10 1/2 inches. These findings of fact, if to be sustained at all, must be sustained on the testimony of two surveyors, Murray Schwartz and E. M. Rohrbough. Neither are public officers, and both were evidently employed by the plaintiffs. The foundation established, as preliminary to the admission of the evidence of these parties, is essentially as follows:

"Q. State your name to the court. A. Murray Schwartz. Q. You are a civil engineer, are you not? A. Yes, sir. Q. And also a surveyor here in the city of Omaha? A. Yes, sir. Q. Did you make a survey of the property at the northwest corner of Thirty-third and Cass streets in the city of Omaha? A. Yes, sir. Q. When was that? A. Well, I made three or four surveys there. Q. I mean with reference to the encroachment of the Paul Kazakes property on the Resnick property? A. The survey was made on that to determine the line between this lot that is at the northwest corner, at the intersection of Thirty-third and Cass streets, and the piece of property that is north of it, and that was on September 25, 1929. Q. Have you got the notes of your survey here? A. Yes, sir. Q. Will you refer to them? A. Yes, sir. (Witness producing book of field notes) Q. At the time that you made that survey did you locate or run the north line of the property which is described as the south 80 feet of the east 43 feet of the west 65 feet of lot 4 in block 5 in Park Place, an addition to the city of Omaha, Nebraska? A. Yes, sir; I did. * * * Q. Did you make a survey to find out whether or not the two-story brick building that

is on the north was over the lot line, on the south? A. Yes, sir; I did."

"Q. You may state your full name to the court. A. E. M. Rohrbough. Q. Where do you live Mr. Rohrbough? A. I live here in the city of Omaha. Q. You are a civil engineer, are you not? A. Yes, sir. Q. And you have practiced your profession how long here in the city of Omaha? A. About 20 years. Q. Now, Mr. Rohrbough are you familiar with the north line of the property described as the south 80 feet of the east 43 feet of the west 65 feet of lot 4, in block 5, in Park Place, an addition to the city of Omaha, Douglas county, state of Nebraska? A. I am. Q. And did you make a survey of that to determine where the lot line was, and whether the two-story brick building to the north was over that lot line or whether it was not? A. I did. Q. When did you make that survey, as near as you can remember it, about when? A. It was about January 25. Q. That is of 1931? A. Yes, of 1931. Q. I now show you this blue print, which the reporter has marked exhibit 2, and will ask you if you made that blue print? (Handing the witness blue print marked exhibit 2) A. I made the tracing from which it was produced. Q. That is your blue print? A. Yes, sir. Q. Now, then, referring to the right of it, here, is that looking up the building from the sidewalk? (Handing same to the witness) A. It is looking directly towards the building. Q. From the sidewalk on Cass street? A. It is what we call the east elevation of the building; that would be on Cass street. Q. In other words, this line here, on which I put an X with my lead pencil, is supposed to be the wall of the two buildings, is that right? (Counsel placing a cross on elevation of exhibit 2) A. Yes, sir. Q. Which is the north wall of the Resnick building and the south wall of the Kazakes building? A. Yes, sir. Q. That is right, is it not? A. Yes, sir."

Upon the preliminary foundation thus established, to meet the burden of proof imposed upon them by the issues being tried, the plaintiffs offered in evidence the opinions

of these private surveyors as to the exact location of the true boundary line in controversy, and also introduced in evidence a map constructed by one of them showing its relative situation. In this, it is thought there was a substantial failure to conform to the procedure which usually obtains in a nisi prius court of this state, as to the necessity of a proper foundation preliminary to receiving the evidence of experts in their professional capacities, which includes that of land surveyors. "In admitting the testimony of surveyors the courts have been careful to confine them within the proper bounds." 5 Ency. of Evi. 601. On this subject, not only is the rule apparently universal that "a land surveyor may state the facts regarding a survey as a preliminary to stating his inference from them" (22 C. J. 690), but with reference to the necessity of so doing the supreme court of Michigan has employed the following language: "A surveyor cannot be allowed, under any circumstances, to fix private rights or lines by any theory of his own. Before a surveyor's evidence can be received at all, it must be connected with the starting points and other places or lines called for by the grants under which the parties claim. His duty is neither more nor less than to measure geometrically in accordance with those data, and his science goes no further. It is not his business to decide questions of law, or to pass upon facts that belong to the tribunal dealing with the decision of facts. His testimony, as a man of science, is never receivable except in connection with the data from which he surveys, and if he runs lines they are of no value unless the data are established from which they are run, and those must be distinctly proved, or there is nothing to enable any one to judge what is the proper result." *Jones v. Lee*, 77 Mich. 35.

The result of these surveys, which appear in the evidence in this case, is a decided and substantial conflict. Both cannot be correct, and it is obvious that one of the surveys is erroneous. The difference exceeds that of "permissible error." One of these surveyors locates the controverted boundary line as coinciding with the outer sur-

face of defendant's wall at the sidewalk level on the east boundary of his tract; the other, 2 1/2 inches south of that point. Likewise, a discrepancy of 2 3/8 inches appear on the western boundary of the two tracts. As already suggested, nothing appears in the record as to the manner of executing the respective surveys on which these divergent conclusions are based; for which reason it would seem that there is nothing presented which would "enable any one to judge what is the proper result," or logically evaluate their respective evidential values.

The maps in evidence are likewise subject to the same criticism. On this subject, the controlling rule seems to be: "The use of maps, models, diagrams, and photographs as testimony to the objects represented rests fundamentally on the theory that they are the pictorial communications of a qualified witness who uses this method of communication instead of or in addition to some other method. It follows, then, that the map or photograph must first, to be admissible, be made a part of some qualified person's testimony. Some one must stand forth as its testimonial sponsor; in other words, it must be verified. There is nothing anomalous or exceptional in this requirement of verification; it is simply the exaction of those testimonial qualities which are required equally for all witnesses; the application merely takes a different form. A witness must have had observation of the data in question, must recollect his observations; and must correctly express his observation, and recollection. Here, then, is a form of expression ready prepared pictorially; he must supply the missing elements; in brief, it must appear that there is a witness who has competent knowledge, and that the picture is affirmed by him to represent it." 2 Wigmore, Evidence (2d ed.) sec. 793. The conclusion would seem to follow that unless the preliminary foundation established in evidence is ample to justify the reception of the oral opinion of the surveyor, it would be wholly incompetent to verify and render admissible the map prepared by him.

Fortunately, this question of whether the testimony of these surveyors is wholly without probative value is one which need not be determined at this time, and we may thus avoid basing this decision on the result of the application of a technical rule of evidence.

On cross-examination, witness surveyor Rohrbough further testified: "Q. At the base, at the ground level of the Kazakes building where it abuts the Resnick building, you say that the Kazakes building extends 2 inches over the lot line? A. That is according to my survey, yes, sir. Q. And that 2 inches remains practically the same all the way up the building until you reach the tile roof, is that correct? A. That is correct. In other words the building is plumb. Q. Did you plumb the Resnick building? A. I did. Q. Is the wall where it abuts the Kazakes building vertical? A. It is. Q. Now, then, did your survey extend to the rear portion of the Kazakes building? A. It did. Q. Did you find that there was any extension over and upon the Resnick building at the rear end of the Kazakes building? A. No. Q. There is none? A. There is none. Q. How far back from Thirty-third street towards the rear does the extension exist? A. It extends over not quite half way. In other words, in front, according to my survey the Kazakes building is over onto the property on the south 2 inches, and at the rear end of the Kazakes building it is 2 3/8 inches north of the building on the south. That extends practically half way. It is on an angle. Q. In other words, the Kazakes building is not up to the lot line at the rear of the Kazakes building? A. Yes, according to my survey that is correct. * * * Q. Did you make a survey of this brick building to the south of the Kazakes building? A. I measured the length of it. * * * Q. This building is a full 80-foot building? A. Yes, sir."

The surveyor, Murray Schwartz, also testified on cross-examination: "Q. Mr. Schwartz, you have indicated that from the southeast corner of Thirty-third and Cass streets to the Kazakes building there is a distance of 80 feet? A.

Yes, sir. Q. Is there an 80-foot building there? A. It is within half an inch. Q. It is within half an inch? A. Yes; it seems to me that the building is about half an inch short both ways. When I look at my notes it is only the one side that it is half an inch short. * * * It is half an inch difference in the width of the building. It is half an inch short on the west side of the full lot dimensions. * * * Q. Mr. Schwartz, did you measure the distance at the rear of the Resnick property—this 80-foot strip? A. Yes; both sides. Q. And is the Resnick building at the rear a full 80 feet? A. Well, 80 feet is the lot. Q. I am asking about the building? A. The building itself is half an inch short right here on the lot (indicating). Q. It looks a half an inch short of being full 80 feet? A. Half an inch of coming down to the Cass street front on the west side. Q. From your survey would you say that the plaintiff in this case has a building 80 feet long and 43 feet deep subject to this half inch discrepancy that you mention? A. No, there is no half inch discrepancy there. * * * Q. Now, then, Mr. Schwartz, at the time you made this survey did you also plumb the Resnick building? A. Which building is that? Q. That is the building to the south—the 80-foot building—did you plumb the north wall of the Resnick building to determine whether or not it was vertical? A. Well, it was vertical up almost to the top of the roof of itself. I did not make any special examination to determine that."

It is obvious, as the result of this evidence, that if plaintiffs possess a building situated wholly on the south 80 feet of the east 43 feet of the west 65 feet of lot 4, in block 5, in Park Place, in Omaha, of the admitted dimensions of 80 by 43 feet, the north wall of which is plumb, as testified to by Rohrbough, or as stated by witness Schwartz on cross-examination, "was vertical up almost to the top of the roof of itself," it must be conceded that there is no encroachment by the Kazakes building at the sidewalk level upon the premises of plaintiffs, and that the district court is wholly mistaken in at least one of the essential elements upon which its conclusions are based.

We are further convinced that encroachments on plaintiffs' premises, if any exist, are confined to that portion of the north wall of the Kazakes building situated above the height of the roof of the Resnick building. That these, if such exist, are due to causes wholly beyond the control of the defendant, and up to the time of the commencement of this action constituted no intentional impairment of plaintiffs' rights by Kazakes, and that no substantial damages accrued to plaintiffs by reason thereof.

The plaintiffs, however, are entitled to have that portion of wall, coping, and cornice attached thereto, if such exists, now projecting over their north boundary line removed forthwith, it appearing that the same are of a removable nature. The south wall of the Kazakes building at the sidewalk level and up to the height of the roof of the Resnick building is situated wholly on the land of defendant and does not encroach on plaintiffs' premises. It further appears that as to the damages to plaintiffs' building occasioned by the water, as claimed by plaintiffs, they were proximately due to a defect in the building of plaintiffs, and were not caused, nor the extent thereof increased, by reason of the discharge of the waters falling upon defendant's building, and then drained and discharged upon and over the building of plaintiffs.

The judgment of affirmance heretofore entered in this court will be set aside, and the decree of the district court is reversed and the cause remanded, with directions to the district court to enter a decree quieting the title and possession in the defendant of the south wall of his building, from the foundation to the height of the roof of the Resnick building, but permanently enjoining him from discharging the waters falling upon his building over or upon the building of plaintiffs, and from maintaining or permitting any eave spout or cornice on the south wall of his building, or allowing any portion of the brick walls thereof, to project over and upon the lands of plaintiffs, described as the south 80 feet of the east 43 feet of the west 65 feet of lot 4, in block 5, in Park Place, in the city of Omaha,

Nebraska; and that the defendant be ordered to remove any and all such projections forthwith; and that each party pay their own costs.

REVERSED.