ELMER A. MICHELSEN, SR., ET AL., APPELLANTS, V. ARNOLD UPTON ET AL., APPELLEES.

123 N. W. 2d 850

Filed October 18, 1963. No. 35346.

James F. Begley, for appellants.

Wear, Boland, Mullin & Walsh, A. Lee Bloomingdale, Smith & Lebens, Tyler & Frerichs, and Otto Wellensiek, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The plaintiffs, Elmer A. Michelsen, Sr., and Edith May Michelsen, brought this action at law against Arnold Upton and Dora Upton, Byron Baker, and Colbert and Gerber, a partnership, defendants, for damages for alleged negligence resulting in the collapse of the plaintiffs' building into an excavation made on the adjoining land owned by the defendants Upton. The trial court sustained the motion of defendants Baker and Colbert and Gerber, a partnership, for directed verdict and dismissed the plaintiffs' petition as to such defendants at the close of plaintiffs' case-in-chief. At the close of all of the evidence the trial court sustained the defendants

Uptons' motion for directed verdict or dismissal of the plaintiffs' petition. The plaintiffs filed a motion for new trial which was overruled by the trial court. Upon the overruling of the motion for new trial, the plaintiffs perfected appeal to this court.

The record shows that the plaintiffs Michelsen are joint owners of the east one-third of Lot 4, Block 71, Weeping Water, Nebraska. This property was 22 feet wide by 132 feet long. Located thereon was a building 22 feet wide and 50 feet long, the front of which was set back from the lot line approximately 4 or 5 feet. Plaintiffs purchased this building at a judicial sale on October 29, 1958. The building was at least 35 or 45 years old. At the rear of the building was a cement-block addition 8 feet by 8 feet, and a frame porch, or lean-to, 13 feet by 7 feet. There was a full basement under the south one-third of the building, with a crawl space beneath the concrete-block addition which was entered from the basement. Beneath this addition was the neck of a cesspool located about 4 feet from the east line of the plaintiffs' property. The rest of the cesspool was underground and covered with dirt. All of the cesspool was located on the plaintiffs' property and did not extend onto the Upton property. A sewer line ran through the cesspool out to the city main. The front or north wall of the Michelsen building was brick with plate glass front and entrance, the east and south walls were concrete on concrete footings, the west wall was 2 by 8 studs butted up against the Rhoades building on the west, and it had a flat roof. The east wall of the building consisted of a concrete wall 8 or 9 inches wide, with footings $4\frac{1}{2}$ to 5 feet deep, with about 2 feet of it underground, and cement blocks laid on top of the footings. The footings in the basement area on the east and south sides were about 3 feet wide and approximately 8 feet deep. The concrete-block addition had a separate concrete footing which was approximately 2 feet in the ground.

The Upton property was purchased by them on March 28, 1960. The lot was 66 feet wide east to west, and 132 feet long running north and south.

The substance of the pleadings, insofar as necessary to consider, is as follows.

The plaintiffs, in their petition and the amendments thereto, alleged negligence against all of the defendants in substance as follows: In failing to give plaintiffs notice of the nature and extent of the excavation; in excavating at a depth of approximately 8 feet below the base of the foundation of the plaintiffs' building, when defendants knew or should have known that the dirt and soil below the foundation would crumble and fall away, thereby removing the support from the plaintiffs' building; in failing to shore up or support the soil, earth, and walls of the building when defendants knew or should have known that the soil and earth on the plaintiffs' property would crumble and fall into the excavation, thereby removing the lateral and subadjacent support for plaintiffs' building; in failing to provide adequate support to prevent the collapse of the plaintiffs' building after the defendant Arnold Upton informed plaintiffs on the day of the collapse that such support would be provided to protect the plaintiffs' building; and in excavating in wet and inclement weather which had softened and weakened the soil without taking precaution to protect against erosion of the plaintiffs' soil beneath the foundation of plaintiffs' building. The plaintiffs further alleged that as a direct and proximate result of the aforesaid wrongful, careless, and negligent acts of the defendants and each of them acting in concert, on June 11, 1960, soil and earth below the foundation of the plaintiffs' building was eroded, crumbled, and fell into the excavation, and the building collapsed and was totally destroyed.

The defendants Upton admitted certain excavation work was done upon the property owned by them, denied all other allegations of the plaintiffs' petition, and

alleged contributory negligence on the part of the plaintiffs as follows:  In failing to give notice or disclosure to defendants, or any one of these defendants, of the existence and location of a certain cesspool located under plaintiffs' building and in the vicinity of plaintiffs' east lot line, at a time when plaintiffs knew that the cesspool was partially filled with water and contained approximately 500 gallons of liquid, and at a time when the plaintiffs knew or should have known that said cesspool extended across plaintiffs' lot line and encroached upon the adjoining Upton property below ground level; in failing to take timely action or precautions for the protection of the cesspool and the natural support of plaintiffs' building at a time when plaintiffs knew that excavation work was being conducted at a depth below the foundation of plaintiffs' building on the adjoining Upton property; in knowingly allowing and permitting the cesspool to undermine and weaken the foundation of plaintiffs' property, notwithstanding plaintiffs' actual knowledge of excavation work on the adjoining nearby property; in failing to take timely action to shore up the east wall of plaintiffs' foundation, notwithstanding ample notice and knowledge of the plans for said excavation work on an adjoining property, and notwithstanding actual observation by plaintiffs of said excavation work adjacent to their building; and in failing to properly repair the cesspool and sewer line upon said property at a time when it was discharging water and sewage into the surrounding area and weakening the west wall of the excavation upon the Upton property and the dirt support of plaintiffs' building.

The defendant Colbert and Gerber, a partnership, filed an answer admitting that this defendant did excavation work upon the property owned by the defendants Upton. The answer alleged that Arnold Upton and Byron Baker directed this defendant and its employee, Elwood Starner, as to the place and location of the excavation upon the Upton property; that the defendant Byron Baker

assisted Arnold Upton in the supervision of the manner and method of the excavation; that the excavation was done according to directions; and there was no encroachment on plaintiffs' property; that it did not excavate any closer than within 2 feet of the plaintiffs' property as directed by defendants Arnold Upton and Byron Baker; and that the west wall of the excavation was completed on Friday, June 10, 1960. The answer then set forth the location of the cesspool which impaired and diminished the natural support of the ground and building on the plaintiffs' lot and rendered the ground and building likely to collapse if proper and lawful excavation for building purposes was made near the west lot line on the Upton property. The answer then set forth other matters and negligence on the part of the plaintiffs not necessary to set out.

Defendant Byron Baker's answer admitted that certain excavation work was done by Colbert and Gerber on property owned by the defendants Upton, and denied all other allegations contained in the plaintiffs' petition. This answer then alleged that any damage allegedly sustained by plaintiffs was proximately caused and contributed to by the negligence and contributory negligence of the plaintiffs in a degree more than slight and sufficient in law to bar recovery by the plaintiffs against this answering defendant, and then set forth certain elements of negligence chargeable to the plaintiffs which need not be asserted.

The defendant Colbert and Gerber, a partnership, amended its answer to contain a general denial of the plaintiffs' petition as amended, except as admitted in such defendant's answer.

The plaintiffs' reply was a general denial of the allegations of the answers of the defendants except such as constitute admissions of the plaintiffs' petition.

For convenience we will refer to the plaintiffs by using the name Michelsen, Sr. The defendants Upton will be referred to as Upton, the defendant Byron Baker

as Baker, and the defendants Colbert and Gerber as the partnership.

The plaintiffs assign as error that the trial court erred in sustaining the motion to dismiss and directing a verdict in favor of defendants Baker and the partnership at the close of the plaintiffs' case-in-chief; that the trial court erred in sustaining the motion to dismiss and directing a verdict in favor of the defendants Upton at the close of all the evidence; and that the decision and judgment of the trial court are contrary to law and the evidence.

Elmer A. Michelsen, Jr., testified that during June 1960, there was a laundromat business carried on on his father's property with 16 washing machines and 5 driers. The laundromat was leased to the Mid-States Operating Company. He was acquainted with Upton and Baker, and Baker was doing some work for him at the time of trial. He testified that on occasions he helped his father with his affairs. He had heard that Upton was going to build a new building on the property immediately east of the property of his father. He watched the excavation work on Tuesday and Wednesday, June 7 and 8, 1960. On Tuesday the excavation had proceeded down 4 or 5 feet over to the laundromat building. The excavation was lower than the footing on his father's building. On Wednesday night the excavation was down 6 or 7 feet by the laundromat building. He noticed the progress of the excavation from 7 to 11 feet on Tuesday, Wednesday, and Friday. The footings on the east wall of his father's building, or the foundation, were approximately 4½ to 5 feet, with about 2 feet in the ground. The footing at the rear of the building was deeper and wider. The basement was about 8 feet deep, 12 feet long, and 22 feet wide. The grade of the excavation was straight up and down along the footings of his father's building. On Friday afternoon, the footings of his father's building began to show, and dirt had crumbled underneath to some extent. The same evening

he went down to the building and observed the wall being separated from the floor, and a crack down the southeast corner of the building with diagonal cracks running off this crack both ways. He went home, called Upton, and told him about what he had seen. Upton apparently did not want to be bothered at that time. He talked to Upton the next morning, and Upton told him he had seen the damage and would take care of it. This was on Saturday. He then went down to the building. The bottom of the wall had pulled out a little more, and there were more cracks. The condition of the building became serious. There was a slight drizzle, and it had rained .96 of an inch Wednesday night and all day Thursday, and about half an inch on Friday night. After supper he went back to the building. His father and some other men were trying to shore up the building with telephone poles. The building started to fall, and then it collapsed.

On cross-examination this witness testified that he never at any time observed anybody working across the lot line separating his father's property from the Upton property.

The plaintiff, Michelsen, Sr., testified that he never received any written notice that a building was to be built and excavating done on the Upton property; that on the second day after the excavation started he observed it; that he discovered there was a cesspool under his property shortly after he bought it; that after the excavation was made and the building collapsed, he determined that the cesspool was all on his property; that he saw Upton Saturday morning and told him something should be done about calking up the wall; and that Upton said he could not do anything about it, and that Baker was in Omaha getting the necessary poles to fix it. He further testified that the excavation was straight up and down at the east wall of his building; that the dirt had crumbled; and that the footings of the building fell down and then the building collapsed.

On cross-examination this witness testified that he was at the excavation site on the average of once a day; that he believed the cesspool would be possibly 8 or 10 feet at the bottom; that he saw liquid in the cesspool after he bought the property; and that the reason he did not shore up his building was not because he did not receive any written notice, and not because he did not know of the excavation, but because he figured it was the responsibility of someone else to shore up the building.

Ross Gerber testified that he was a member of a partnership engaged in general excavating and had an employee by the name of Starner who operated the machine on the Upton property; that Upton contacted this witness by telephone with reference to the work to be done; that the machine had been operating in Weeping Water; that he talked to Baker during the time the excavation work was in progress as to how it was progressing; and that the excavation was 43 feet 8 inches in width. Upton was billed for the work and paid the bill. The excavation was 2 feet from the east line of the Michelsen property. After the excavation was finished, the space from the west edge of the hole or excavation over to the Michelsen-Upton property line was 2 feet.

Arnold Upton testified that he purchased the property for the purpose of building a supermarket; that there was a small cabin-type building, possibly 10 feet by 12 feet, on the lot; that on the west one-third of the lot was the Lane building used for a recreation parlor, and on the center one-third of the lot was a house; and that he had the Lane building and the house removed. A small building remained and was used by Rothe as a plumbing shop. With reference to the building that he was going to build on the lot, he was going to put in a bowling alley, and to do so he had to excavate to a depth of 11 or 12 feet. The length of the building was extended to 132 feet. Baker was building the building, and this witness was to do the cement work. The ma-

chine came onto the property on June 6, 1960. He believed that Baker told the operator of the machine to clear up the rubble, and not to go closer than 2 feet from the Michelsen building. The building Upton was going to build was to be 40 feet 8 inches wide and 132 feet long. Upton futher testified that he told Michelsen, Jr., that he had bought this land and was going to put a building on it.

On cross-examination this witness testified that prior to the excavation he and Michelsen, Sr., had a conversation, and Michelsen, Sr., wanted some dirt from the excavation put on his property; that Michelsen, Sr., asked Upton a few times about shoring up his building, and Upton told Michelsen, Sr., that he did not believe that shoring up the building was his responsibility; that Michelsen, Sr., knew that Upton was going to build a building with a bowling alley in it because they had talked about it prior to the time of the building; and that Michelson, Sr., knew that excavation was to be done on the lot and that there would be about 3 feet between the Upton building and the Michelsen building.

Baker testified that he was a general builder and contractor; that he first talked to Upton about a building on February 10, 1960, and agreed to build a building for Upton; that the conversation between Starner, the operator of the excavation machinery, and this witness was in regard to clearing up the rubble and instructions not to go closer than 2 feet from the Michelsen building; and that Upton instructed Starner to the same effect. On cross-examination this witness testified that as to the width of the excavation, it was measured the last day, when the excavation was completed, and it was right at 2 feet from the west edge of the property line between the Michelsen and Upton property.

Starner testified that he did the excavation work; that he started on Monday, June 6, 1960; and that he saw Michelsen, Sr., when he was working sometime Monday

afternoon, and saw him two or three times a day every day after that.

Lynn Rothe testified that he was a plumber; that he was in and out of his plumbing shop, which was located on the Upton property, every day and knew about the excavation; that on Friday, June 10, 1960, he did some repair work on a sewer line in the southeast corner of the Michelsen building, or on the outside edge of it; that the sewer line came out around the east side of the cesspool; that the sewer line broke, and he made a temporary repair; that the sewer line served the Michelsen building and originated inside of the laundromat on the Michelsen property; and that it ran to the south and came out around the cesspool and hooked onto the sewer line. He further testified that when he arrived, a couple of clay tile were broken clear off. It was a clay-tile sewer. The cesspool let loose prior to the time the sewer line broke, and as the cesspool broke and failed, the sewer line dropped and broke. There was dirty water with an unpleasant odor down in the excavation. The diameter of the cesspool was approximately 8 feet, and it extended east $1\frac{1}{2}$ to 2 feet underground over into the Upton property.

Max Burroughs testified that he was a consulting engineer; that he went to Weeping Water and made an investigation, a visual observation, of the soil and surroundings including the building; that the soil was of a clay type which would normally support a weight of from 2,000 to 3,000 pounds per square foot; and that the building and equipment therein placed a weight of approximately 500 pounds per square foot on the footings. This witness further testified that the water in the cesspool would be under a hydrostatic head and would wash out the slope of the excavation; that in his opinion the primary and basic cause of the collapse of the plaintiffs' building was the failure of the cesspool; and that if the cesspool had not failed, the plaintiffs' building would not have collapsed.

Parts of the deposition of Michelsen, Sr., were read into evidence. He testified that the cesspool had in it 400 or 500 gallons of water; that he knew it was under the building when he bought it; and that it was made out of rock. He first found out that Upton was going to build a building about 2 months before he put it up, because Upton told him so. He never told Upton there was a cesspool under the building. When Upton told him he was going to build a store, Michelsen, Sr., told Upton he could not go very deep because Michelsen's building did not have a basement in it, and if Upton got below the footings the building would fall, but Upton said he was going right up to Michelsen's building, that it was his dirt and his lot line. Michelsen, Sr., told Upton he might get into trouble and might get himself a lawsuit, and Upton said it was his property and he had a right to go as close to the line as he wanted to.

The plaintiffs, in support of their contention that the defendants were negligent, cited Restatment, Torts, § 819, p. 204, as follows: "f. Specific acts or omissions which may be negligence. Under particular circumstances and conditions, it may be negligence: (1) to excavate sand, gravel, loam, or other friable soil otherwise than in sections; (2) not to furnish temporary support by shoring; (3) to fail to give timely and sufficient notice of the proposed excavation; (4) to maintain an excavation under such conditions or for such a length of time as to expose the adjoining lands with artificial additions to unreasonable risk of harm as by exposure to rain, frost or weathering; (5) to make use of improper instrumentalities or improper use of proper instrumentalities; (6) to employ incompetent workmen; (7) to neglect to ascertain in advance whether the excavation as planned is likely to expose adjoining lands with artificial additions to unreasonable risk of harm; (8) to represent to the adjoining landowner that a certain method will be followed or that certain precautions will be taken, and thereafter without adequate notice change

the method or omit the precautions. Any act or omission which would constitute negligence because of its tendency to harm the land or structures of another in cases other than the making of excavations is equally negligent if done or omitted in the course of excavating."

The plaintiffs cite authority as follows: "Thus, it is quite generally conceded that the owner of land who intends to make an excavation thereon should, in the exercise of due care, notify the adjoining landowner of the intended improvement, and allow time so that he may take the necessary precautions to protect the buildings on his land, * * *. The obligation to give the notice, like that to see that the excavation is made with due care, seems to rest upon the recognized proposition that a party in possession of fixed property must take care that it is so used and managed that other persons shall not be injured, whether it is managed by his own servants or contractors or their servants. * * *

"The failure to give notice is evidence of negligence and may be sufficient to justify a finding that the excavator did not use reasonable care in respect of the excavation, * * *.

"A notice that an excavation is to be made on an adjoining lot, to be sufficient, must inform the person to whom it is given of the nature and extent of the excavation, so that he may, after the excavator has done all that is reasonably prudent for the safety of the building, take the necessary precautions to protect his property absolutely. * * * Where the plans of the person making an excavation are changed so as to render the work more dangerous to the adjoining premises, notice of such change must be given to the adjoining owner." 1 Am. Jur. 2d, Adjoining Landowners, § 51, p. 726.

It has been held that the person who makes the excavation is liable for the damage caused. On the principle that all who participate in a tort are answerable for damages resulting therefrom, not only the person who makes the excavation, but any person who directs

the excavation to be made or under whose authority it is made, may be held liable for the resulting injury to the adjoining land. See 1 Am. Jur. 2d, Adjoining Landowners, § 72, p. 742.

The plaintiffs cite Spohn v. Dives, 174 Pa. 474, 34 A. 192, wherein the court held: "One who makes an excavation upon his own land deeper than the foundation of the building upon an adjoining lot, without notifying the owner of the building to protect his property, is liable for the fall of the foundation wall caused by his failure to use ordinary care and diligence to protect it."

The plaintiffs also cite Bland v. Fox, 172 Neb. 662, 111 N. W. 2d 537, wherein this court held: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence. * * * In an action wherein there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him."

In many cases the adjoining landowner's personal knowledge of the intended excavation has been held to dispense with the necessity of giving notice. See Annotation, 50 A. L. R. 486 at p. 507.

In Jamison v. Myrtle Lodge No. 355, 158 Iowa 264, 139 N. W. 547, it was held that notice of excavation on a lot, affecting lateral support of an adjoining lot, need not be given the adjoining owner, he being in occupancy of his lot and aware of the situation from the progress of the work. The court said: "The plaintiffs were occupying their property and as well aware of the situation as the work of excavating progressed as defendant, and for this reason there was no occasion for notifying plaintiffs of what was being done. Schultz

v. Byers, 53 N. J. Law, 442 (22 Atl. 514, 13 L. R. A. 569, 26 Am. St. Rep. 435); Novotny v. Danforth, 9 S. D. 301 (68 N. W. 749)."

The evidence discloses that the plaintiff, Michelsen, Sr., was well aware of the intention of the defendants Upton relating to the proposed excavation, and that he considered it a threat to his building. It is obvious from the evidence that the plaintiffs had full, complete. and adequate notice of the intention of the defendants Upton to excavate on their lot.

With reference to the defendant partnership, the evidence is undisputed that its work was carefully and skillfully done. The plaintiffs made no objection or complaint as to the method or manner in which this work was done. The evidence shows that there were 2 feet of clay or dirt left between the excavation and the plaintiffs' building, which was according to specifications. The plaintiff Michelsen, Sr., and his son both testified that the machine never went across the lot line. The plaintiffs made no request to this defendant to protect the plaintiffs' building. There is no evidence of negligence on the part of the defendant partnership. The trial court did not commit error as contended for by the plaintiffs.

With reference to the defendant Baker, the evidence fails to establish the exact legal relationship, if any, of this defendant to the other defendants. Baker did have an arrangement with Upton for the construction of a building. Just what the terms of the agreement were is not shown. Upton was present on every occasion when Baker talked to the excavators after the work started, and the excavators agreed to stay 2 feet from the plaintiffs' building. Arnold Upton paid the excavators. The evidence fails to show that Baker was in any way connected with the excavators which in any manner would make him liable for their actions. There is no evidence that Baker hired or controlled the excavators, or that he offered or agreed to do so. The only conclu-

sion to be drawn from the record is that as the prospective builder, Baker was interested in seeing that the excavation was the right size and in noting its progress. He was also interested for the reason that he was using dirt that came from the excavation to fill a lot he owned. The plaintiff, Michelsen, Sr., testified that he did not believe it was Baker's fault that the building collapsed, and he always felt that way. The record discloses no negligence on the part of the defendant Baker, and the trial court did not commit error as contended for by the plaintiffs.

The defendants Upton, in their answer, raised the issue of contributory negligence on the part of the plaintiffs.

"Knowledge, or reason to know, of the danger arising from an excavation is necessary to contributory negligence. Vigilance to discover that an excavation is being made and the danger therefrom is not required of the possessor of the supported land. But when he knows or has reason to know of the danger he is guilty of contributory negligence if he fails to take such precautions as an ordinarily prudent man would take under like circumstances to guard his premises against harm." Restatement, Torts, § 819, p. 205.

The rule in regard to contributory negligence of the adjoining owner appears to be that where such negligence is the proximate cause of the injury, or where it has materially contributed to the injury, there can be no recovery. See Jamison v. Myrtle Lodge No. 355, *supra*.

In the case of Feeley v. Butterworth & Sons, 42 Wash. 2d 837, 259 P. 2d 393, the plaintiff instituted an action to recover damages when his land and garage caved into an excavation dug by the defendant. The evidence disclosed that water from an unknown underground drainpipe on the plaintiff's land discharged water into the slope of the excavation. The court said: "* * * in view of the respondents' defense and the convincing showing that the * * * (plaintiff), by means of a concealed pipe,

artifically discharged surface waters into the land of the.* * * (defendant), it is difficult for us to see how * * * (plaintiff) can counter by showing that his own acts did not cause his injury. * * *

"As to whether lateral support was ever deprived the plaintiff in the first instance, the evidence discloses that the excavating work was properly done, with due care for plaintiff's property rights; * * * that the slide occurred, or the bank was washed away, mainly by waters discharged from the concealed drainpipe; * * *. An even steeper adjoining slope, left by the excavation, did not cave in or give way." The above-cited case is somewhat similar in comparison to the facts in the instant case.

The evidence in the instant case shows that Michelsen, Sr., alone knew of the existence of the cesspool containing 400 or 500 gallons of water. He took no steps to protect his land or building, and did not inform any of the defendants of the existence of the cesspool because he did not think it was any of their business.

It appears to be well settled that an excavating landowner is not liable for injuries to buildings on adjoining land unless the landowner is negligent in his manner of excavating.

In Resnick v. Kazakes, 122 Neb. 489, 240 N. W. 585, modified on other grounds on rehearing, 123 Neb. 654, 243 N. W. 861, which is the only decision in this state wherein this court had occasion to speak upon the subject, the court said: "It clearly devolved upon the defendant to provide the proper support for his building where timely notice of the plaintiffs' intention to excavate for a building on the adjoining lot was given. And the plaintiffs are not liable in damages to the defendant for the alleged weakening of the walls of the defendant's building where it is shown that the plaintiffs used due care in their excavation. Wahl v. Kelly, 194 Wis. 559 (217 N. W. 307); Christensen v. Badger Improvement Co., 187 Wis. 598 (204 N. W. 510)." See, also, Covell v.

Sioux City, 224 Iowa 1060, 277 N. W. 447.

The evidence shows that the clay-type soil was sufficient to support the plaintiffs' building. Only the presence and condition of the cesspool, which was known only to the plaintiffs, necessitated support of the plaintiffs' building. The leaking sewer line broke on Friday, June 10, 1960, and the cesspool under the plaintiffs' building was discharging its contents into the soil supporting the building. The support had been so undermined that on Friday night there were large cracks in the walls of the plaintiffs' building, and the wall had pulled away from the floor. The evidence not only fails to show that anything could have been done to prevent the collapse of the plaintiffs' building, but in fact shows that nothing could have been done, because the subsequent efforts of Michelsen, Sr., Upton, and others to support the building later on Saturday were unavailing.

Some contention is made by the plaintiffs that the defendants were negligent in failing to provide a survey and emplace stakes; in excavating over and onto the plaintiffs' property; in excavating in wet and inclement weather; and that such acts were the proximate cause of the collapse of the plaintiffs' building, and sufficient to create an issue of fact to be submitted to the jury.

The record shows that there is no evidence that the rain in any manner eroded the excavation so as to contribute to the collapse of the plaintiffs' building, or that it was improper to excavate after the rain. An expert witness testified that the rain would not affect the clay-type soil into which the excavation was made, and would not affect the load capacity of the soil; and that rain in the amount which fell in this case would not erode the clay-type soil, and would wet the soil to a depth of only an inch or two inches. Michelsen, Jr., testified that on Friday, after the rain had ceased, the excavation was in dry soil. There is no competent evidence introduced by the plaintiffs in contradiction of such facts.

There are other rules that are pertinent to a determination of this appeal.

"The rule is that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. * * * It is the duty of a trial court to direct a verdict where the evidence is undisputed or where the evidence, though conflicting, is so conclusive that it is insufficient to sustain a verdict and judgment." Edmunds v. Ripley, 172 Neb. 797, 112 N. W. 2d 385. See, also, Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551; Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N. W. 2d 238; Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254.

In Milk House Cheese Corp. v. Chicago, B. & Q. R. R. Co., 161 Neb. 451, 73 N. W. 2d 679, this court said: "Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination."

We conclude that the trial court did not commit prejudicial error with respect to the defendants Upton as contended for by the plaintiffs.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.