DAVID A. BAXTER AND SONS, A PARTNERSHIP, APPELLANT, V. ANTHONY R. SOFIO ET AL., APPELLEES.

156 N. W. 2d 141

Filed February 9, 1968. No. 36692.

Leary & Leary, for appellant.

Webb, Kelley, Green & Byam, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is a suit on a contract for material furnished and for labor and services performed. The broad question presented is whether the plaintiff, a subcontractor, in orally contracting for extras on a motel construction contract was dealing with the defendant personally or as an agent in a representative capacity for the owner contractor.

An agent who fails to disclose the fact of his agency and represents himself as principal inducing another to deal with him as such is liable and may be treated as principal for all purposes, unless and until the fact of his agency is known or made known by him to the contractor. An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract. Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315; Restatement (2d Ed.), Agency, § 322, p. 72.

Defendants Sofio owned the land. They executed a 99-year lease to Westgate Manor, Inc. It is not contended that there is any evidence to establish any liability on the part of Agnes Sofio and, therefore, reference herein will be made to Dr. Anthony R. Sofio solely as defendant. Westgate Manor, Inc., contracted with American

Construction Company of Texas for building the motel. American Construction Company subcontracted the electrical work to plaintiff in April 1962 (exhibits 2 and 36). By the terms of the contract, Westgate Manor, Inc., was defined as the owner and the evidence shows that Westgate Manor, Inc., operated under the trade name of "Lamplighter Motor Inn." The subcontract with American Construction Company prohibited extras unless by written order of the owner, countersigned by the architect, or by a written order of the architect stating that the owner authorized it. The subcontract with the plaintiff also provided that nothing therein could create any contractual relationship with the owner (Westgate Manor, Inc.). The defendant Sofio was president of Westgate Manor, Inc., although plaintiff denies any knowledge of this until after the termination of the transactions involved herein.

By October 1963 plaintiff had almost completed its subcontract and electrical work. Defendant came to plaintiff and asked plaintiff to do additional work. Plaintiff's own testimony is that Sofio told him (David Baxter, Jr.) *"that he would authorize payment of additional work"* and designated R. J. Boutte as his representative to take orders.

A series of job orders, signed by Boutte, Miller, Jones, Lynch, and others, followed. The extra work was done and invoices sent beginning February 28, 1964, and through April 1964, for a total amount of $1,310.85. A few of these invoices were addressed to Sofio personally but almost all of them were captioned and sent to "Lamplighter Motor Inn" (or "Hotel").

We pause at this point. The evidence established that the plaintiff knew the identity of the owner, Westgate Manor, Inc., and Lamplighter Motor Inn (or Hotel). The plaintiff states in its brief that the original contract documents described the owner as "Westgate Motor Hotel," "Westgate (Lamplighter) Motor Hotel," and "Westgate Manor, Inc." The evidence shows that these

names were used loosely and interchangeably to designate one entity. As early as December 1962, almost a year before the transactions in question, plaintiff wrote a letter designating the contract as "Westgate (Lamplighter) Motor Hotel." The defendant stated he would "authorize" payment. This word, separately or in context, does not import personal obligation, but rather exactly what it says, authority to perform and pay for the work. Webster's New Twentieth Century Dictionary (2d Ed.), Unabridged, p. 126, says: "Authorize. 1. To give official approval or legal power to; * * *." And defendant Sofio ordered no work himself. He authorized Boutte, Miller, Jones, and others to specify the work wanted on the job orders. These men were all employees of Lamplighter Motor Inn (or Hotel) and known as such to the plaintiff. Most of the job orders were countersigned by one of these men, including Miller, but none were countersigned by defendant Sofio. Further, Miller was the "executive director" of Lamplighter Motor Inn (or Hotel) and was recognized and addressed as such in mutual correspondence. All of this alone conclusively shows that plaintiff was dealing with Sofio and all the others as agents of and in their representative capacity for the "owner," Westgate Manor, Inc., Westgate (Lamplighter) Motor Hotel, and Westgate Motor Hotel.

But there is more. Almost all of these invoices which plaintiff prepared were sent to the Lamplighter Motor Inn (or Hotel), the same owner and entity it had been dealing with or known about in the year and a half (from April 1962) it had been working on the job. Plaintiff knew the "owner" was a corporation and, therefore, could only act through agents, and the plaintiff regarded it as such in all of its transactions and dealings herein. The interpretation given a contract by the parties themselves while engaged in the performance of it is one of the best indications of their true intent and ordinarily should be enforced by the court. Lortscher v. Winchell,

178 Neb. 302, 133 N. W. 2d 448; Muller Enterprises, Inc., v. Gerber, 178 Neb. 463, 133 N. W. 2d 913.

We go now to the summer of 1964 after the bill for $1,310.85 was presented to Lamplighter Motor Inn (or Hotel) and was not paid. The lamp posts were weak and unstable. In a series of letters, Miller, as "executive director," on Lamplighter Motor Inn stationary, complained to the plaintiff. Not only was agency identification brought home to the plaintiff by these letters, but the face of the letters indicated that copies were being sent to Sofio and other representatives of Lamplighter Motor Inn. Plaintiff in answering these letters recognized this by addressing them to "Mr. Pat Miller, Executive Director, Lamplighter Motor Inn," and also indicated on the face of the letters that copies were being sent to Sofio, Boutte, and others. In one of these letters to Miller, as executive director, on September 28, 1964 (exhibit 28), arranging a meeting to discuss the problem, the plaintiff says, "* * * we believe it would be necessary for Dr. Sofio to be present so that he will be *aware* of the solution to *our mutual problems*." (Emphasis supplied.) A meeting was held and the dispute resolved because plaintiff had complied with specifications. Further work was contracted for to remedy the sagging lamp posts in the sum of $779.43. Plaintiff complained about not being paid the $1,310.85. Plaintiff's own testimony is that, with Miller and Sofio present, Sofio said, "You know, why, *we* can get all this resolved and *we* will get you your money." (Emphasis supplied.) Neither by context of the circumstances or express words did defendant ever assume personal liability. We shall not labor a further intricate analysis of the further evidence. The evidence overwhelmingly establishes that plaintiff dealt with the defendant and many others as to these specific transactions, in their representative capacity, and after all of these transactions were consummated plaintiff filed a mechanic's lien (exhibit 35) which included and designated Westgate Manor, Inc., a corporation, as an owner.

Not irrelevant is the fact that plaintiff is an experienced contractor having been in business since 1932. A contract or agreement is a manifestation of mutual assent by two or more persons to one another. Restatement, Contracts, § 3, p. 5. The evidence wholly fails to establish this essential relation.

This is a law action and the court directed a verdict for the defendant. Plaintiff argues strongly that since there is a conflict in the evidence, it must be submitted to the jury. Broadly speaking, the purported conflicting evidence herein is, in effect, in the nature of conclusions and is contrary to the undisputed documentary evidence and to plaintiff's own evidence as to the defendant's oral statements. But the proper rule in the posture of this particular case is that a verdict should be directed if the evidence is undisputed or if the evidence, although conflicting, is so conclusive that it is insuffiicent to justify a verdict or sustain the judgment. Cover v. Platte Valley Public Power & Irr. Dist., 167 Neb. 788, 95 N. W. 2d 117; Pueppka v. Iowa Mutual Ins. Co., 165 Neb. 781, 87 N. W. 2d 410; Michelsen v. Upton, 175 Neb. 743, 123 N. W. 2d 850; Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254. We hold that reasonable minds could not differ on the issue of the capacity in which the plaintiff dealt and contracted with the defendant.

The able trial judge succinctly summarized this case in this finding: "* * * Sofio said he would authorize payment of these obligations, which is not a statement assuming an obligation. It is, I think, a statement then indicating that a person is engaged in a representative capacity. On that basis, and on the basis of a failure of proof in that general area, the motion is sustained."

The judgment of the district court directing a verdict is correct and is affirmed.

AFFIRMED.